THE FIRST NATIONAL BANK OF FLORA

*v.*

AARON R. BURKETT.

*Filed at Mt. Vernon January 18, 1882.*

1. INSOLVENT DEBTORS—*discharge from arrest or imprisonment—malice as "the gist of the action."* The word "malice," in sec. 2, ch. 72, Rev. Stat., entitled "Insolvent Debtors," implies a wrong inflicted on another with an evil intent or purpose. It requires the intentional perpetration of an injury or wrong on another. Such intention to commit the wrong is necessary to deprive the party of the right to a discharge from arrest or imprisonment under the act.

2. A party shipped a lot of hogs to commission merchants in Cincinnati for sale, taking a bill of lading from the railroad company, after which he

applied for and obtained a loan of $400 from a bank, giving the bank a sight-draft on the commission merchants for that sum, and pledging the bill of lading, which he attached to the draft, and then, before the draft was presented, collected the entire sum due from the commission men, leaving nothing to pay his draft, which was protested: *Held*, that his act in collecting the money, after giving the draft, was an intentional wrong, little, if anything, short of a criminal act, and was malicious, in the statutory sense.

3. So where a judgment was recovered in an action on the case based upon such cause of action, and upon the non-payment of the judgment a *capias ad satisfaciendum* was issued, under which the defendant was arrested and imprisoned, it was *held*, that by reason of his wrongful act he could not avail of the provisions of the Insolvent Debtor's act to obtain his discharge from the imprisonment.

4. Action—*what is the gist.* The *gist* of an action is the cause, ground or foundation of the suit, without which it will not lie, or in other words, the ground essential to give rise to a cause of action.

5. Same—*when malice is of the gist.* If a party wrongfully and dishonestly draws money of his own in the hands of another, after giving a draft for the same to one who advances him the money upon it, the fraud so practiced upon the party advancing him the money is of the essence or foundation of an action on the case against him, and is malicious, within the statutory sense of that word, as used in section 2 of the Insolvent Debtor's act.

Appeal from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Clay county; the Hon. C. S. Conger, Judge, presiding.

Mr. Rufus Cope, for the appellant.

Mr. Justice Walker delivered the opinion of the Court:

It appears that appellee shipped by rail to Cincinnati, Ohio, sixty-five head of hogs. He consigned them to Green, Huddleson & Co. for sale, taking a bill of lading from the railroad company. He applied to the First National Bank of Flora for a loan of $400. He drew a sight draft for that sum on Green, Huddleson & Co., and pledged the bill of lading, subject to charges, for its payment, and attached it to the draft. The hogs were received and sold, realizing $425, but before the draft was presented, appellee collected that and all other money he had in the hands of that firm. When

the draft was presented, for the want of funds in the hands of the drawees it was protested for non-payment. The bank thereupon brought case, and on trial recovered a judgment against appellee for the sum of $401.38, which has not been paid or satisfied. Fraud was averred in the declaration as the ground of action.

Afterwards, the judgment remaining unpaid, plaintiff sued out a *capias ad satisfaciendum*, and under it defendant was imprisoned. He thereupon filed a petition to the county court for a discharge, on the ground that he was illegally committed. The bank answered, setting out the proceedings in full in the suit in which it had recovered the judgment, but the county court sustained a demurrer to the answer, and discharged defendant. The bank appealed to the circuit court, where the judgment was affirmed. The bank thereupon appealed to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed, and the case is brought to this court on a certificate that the case involves a question of law which is required to be passed on by this court.

The assignment of errors questions the correctness of the construction given by the Appellate Court to the second section of chapter 72, in relation to insolvent debtors. It provides, that "when any person is arrested or imprisoned upon any process issued for the purpose of holding such person to bail upon any indebtedness, or in any civil action wherein malice is not the *gist* of the action, or when any debtor is surrendered or committed to custody by his bail in any such action, or is arrested or imprisoned upon execution in any such action, such person may be released from such arrest or imprisonment by complying with the provisions of this act." No question as to such compliance is raised on this record, it being contended that under the facts disclosed appellee was not entitled to a release,—that the *gist* of the action in which judgment was recovered, was malice.

This court had occasion, in the case of *The People* v. *Greer*, 43 Ill. 213, to give a construction to this clause of the section. It was there said, that the intention was to release all persons confined on civil process, by their compliance with the requirements of the statute, although the cause was founded in tort, unless the tort was malicious, or, what amounts to the same thing, where the tort originated in malice or where malice was the *gist* of the action. What, then, is malice?

In the case of *Harpham* v. *Whitney*, 77 Ill. 32, the case of *Mitchell* v. *Jenkins*, 5 B. & A. 594, was referred to as defining malice. It was there said by PARKE, J., "that the term 'malice' in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus*, and as denoting that the party is actuated by improper and indirect motives." That definition was applied in a case of malicious prosecution. The term has been defined: "A formed design of doing mischief to another,"—"a wicked intention to do an injury to another." Thus, the forsaking of a husband or wife of the other, without sufficient cause, is said to be a malicious abandonment. Malicious mischief is the wanton or reckless destruction of or injury to property. It in some cases implies a wrong inflicted on another with an evil intent or purpose, and this is the sense in which it is employed in this statute. It requires the intentional perpetration of an injury or wrong on another. The wrong and intention to commit the injury are necessary to deprive the party of the right to a discharge from arrest or imprisonment. In this case there was an intentional wrong, little, if anything, short of a criminal act, and it was malicious, in the statutory sense.

Being malicious, was it the *gist* of the action? The *gist* is defined to be the cause for which an action will lie,—the ground or foundation of a suit, without which it would not be maintainable,—the essential ground or object of a suit, and

without which there is not a cause of action.    In this case an action on the case could not have been maintained had not the defendant wrongfully and dishonestly drawn the money for which the hogs were sold, and for which he had given a draft to the bank on Green, Huddleson & Co., and for which draft the bank paid him.    This fraud was of the essence or foundation of the action, and in the statutory sense it was both wicked and malicious.

We are therefore of opinion that the county court erred in discharging appellee from the arrest and imprisonment, and it was error in the circuit and Appellate courts to affirm the judgment, and the judgment of the latter court must be reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT dissenting.