# In the matter of the petition of Wilson Carey.
# On Appeal of C. W. Lasher, Appellant, v. Wilson Carey, Appellee.
# Gen. No. 18,337.

1. EXECUTIONS, § 296*—*what constitutes malice preventing discharge of an insolvent debtor.* On application for discharge under the Insolvent Debtors' Act, J. & A. ¶¶6198-6233, a statement of claim filed in the Municipal Court of Chicago, containing the words "which checks the defendant cashed and fraudulently and tortiously appropriated to his own use and has failed to account therefor," sufficiently shows malice, so as to prevent discharge.

2. ASSIGNMENTS, § 2*—*what causes of action are assignable.* A cause of action arising from tort, as where a person appropriates money to his own use and fails to account therefor, is assignable.

3. JUDGMENTS, § 582*—*when a judgment is assignable.* A judgment for the recovery of money which a defendant appropriated to his own use is assignable.

4. JUDGMENTS, § 590*—*what rights an assignee of a judgment acquires.* The assignee of a judgment has the legal right to sue out a *ca. sa.* and have the judgment debtor arrested, particularly under an assignment by which the assignor makes the assignee his attorney to "sue out executions and other writs and take all lawful ways for the recovery of the money due."

5. EXECUTIONS, § 302*—*what evidence is necessary on application for discharge of an insolvent debtor.* Where a petition for discharge of an insolvent debtor shows the issuance of a *ca. sa.* and the arrest of the debtor, the fact that the transcript of the record in the Municipal Court does not show such issuance is immaterial.

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

6. EXECUTIONS, § 305*—*what objections can be urged on appeal from discharge of an insolvent debtor.* An objection that no money was paid to the sheriff for advance board of an insolvent debtor will not be considered on appeal when the regularity of the proceedings culminating in arrest were not attacked in the court below.

7. APPEAL AND ERROR, § 1113*—*what constitutes ground for dismissal.* Where a judgment against a debtor is assigned and subsequently an appeal is allowed from an order discharging such debtor from arrest, as insolvent, upon the "arresting creditor" filing an appeal bond, the fact that such bond is executed in the name of the assignor of the judgment, the nominal party in interest, instead of the real party, will not warrant dismissal of the appeal on the ground that the bond is defective.

8. APPEAL AND ERROR, § 1106*—*what parties may urge dismissal of an appeal.* Where an appeal is prosecuted by the assignee of a judgment in the name of the assignor, indemnity being offered, the assignor cannot urge the dismissal of the appeal on the ground that he has no interest in the proceedings.

9. APPEAL AND ERROR, § 339*—*what persons are entitled to review.* Where an assignment of a judgment contains a power of attorney authorizing the assignee to "take all lawful ways for the recovery of the money due," an appeal from an order discharging the judgment debtor, under the Insolvent Debtors' Act, J. & A. ¶¶ 6198-6233, is a "lawful" and necessary step to recover the money due, and the judgment debtor cannot urge that the assignee has no power to appeal.

Appeal from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed October 9, 1913.

HENRY W. PRICE and HUGH T. MARTIN, for appellant.

LEWIS, FOLSOM & STREETER, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment of the County Court of Cook county, discharging Wilson Carey, appellee, from the custody of the sheriff of Cook county. The judgment was entered upon his application for re-

*See *Illinois Notes Digest*, Vols. XI to XIV, same topic and section number.

lease under the provisions of the "Act concerning Insolvent Debtors." (J. & A. ¶¶ 6198-6233.)

On January 4, 1909, the appellant, C. W. Lasher, commenced a tort action against the appellee in the Municipal Court of Chicago. Appellant's statement of claim filed in that action was as follows: "Plaintiff's claim is for the proceeds of two checks aggregating $107.30, drawn by the plaintiff, payable to the order of E. T. Stokes, and delivered to the defendant, for the purpose of payment of an open account due from the plaintiff to the said E. T. Stokes and which checks the defendant cashed and fraudulently and tortiously appropriated to his own use and has failed to account therefor."

On March 5, 1909, Carey was served with summons, and he subsequently entered his appearance in said action. The cause was tried before a jury, and on June 3, 1909, they returned the following verdict: "We, the jury, find the defendant guilty as alleged in plaintiff's statement of claim and assess the plaintiff's damages at the sum of one hundred and seven and 30-100 dollars ($107.30) in tort."

On June 18, 1909, after overruling motions for a new trial and in arrest of judgment, the Municipal Court entered judgment against Carey on said verdict, and directed that an execution issue. Carey was given thirty days in which to file a bill of exceptions, and the stay of execution bond was fixed at three hundred dollars. It does not appear that any bill of exceptions or stay of execution bond was ever filed in said Municipal Court.

On September 13, 1911, there was filed in the office of the clerk of the Municipal Court a written assignment of said judgment, dated September 12, 1911, signed, sealed and acknowledged by said Lasher, in which it appeared that Lasher, in consideration of the $53.65 to him paid, had sold and assigned to Raymond W. Stevens, and his assigns, the said judgment "and

any and all sum and sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon;'' and in which it further appeared that Lasher had appointed Stevens, and Stevens' executors, administrators and assigns, his true and lawful attorney, for him and in his name, but for Stevens' sole use and benefit and at Stevens' own costs and charges, "to ask, demand, and receive, *and sue out executions, and other writs, and take all lawful ways for the recovery of the money due*, or to become due, on the said judgment, and, on payment, to acknowledge satisfaction, or discharge the same,   *   *   *   hereby ratifying and confirming all that his said attorney, or substitute, shall lawfully do in the premises;'' and in which it further appeared that Lasher covenanted that there was due on said judgment the sum of $107.30, and that he would not collect or receive the same, nor release or discharge the judgment but would *"own and allow all lawful* proceedings therein,'' Stevens saving Lasher harmless of and from any costs and charges in the premises.

On September 18, 1911, the appellee, Carey, filed his petition in the County Court for his release in which he alleged that he "has been arrested under a writ of *Ca. Sa.* issued by Homer K. Galpin, clerk of the Municipal Court of Chicago, in favor of C. W. Lasher for the sum of $107.30, and is now in the custody of the sheriff of said county of Cook, under and by virtue of said writ, and is desirous of releasing his body from such arrest or imprisonment by delivering up his property.'' On the same day he presented his appearance bond in the penal sum of two hundred fifty dollars, conditioned for his subsequent appearance before the county court, which bond was approved, and he was released subject to the conditions of the bond, and the cause was continued.

On October 6; 1911, the appellant, Lasher, filed an answer to said petition in which he averred that said

writ of *Ca Sa.* under which Carey was arrested, was issued upon said judgment of the Municipal Court against Carey; that said judgment was rendered in a cause in which malice on the part of Carey was of the gist of the action; that that fact was *res adjudicata* between the parties; and that inasmuch as the question of malice was settled by said judgment Carey was not entitled to be discharged and that the petition should be dismissed.

Subsequently a hearing was had, at which time a transcript of the record of said cause in the Municipal Court, certified by the clerk of that court as being a "true, perfect and complete" transcript, was introduced in evidence, and Lasher objected to the taking of any verbal testimony on behalf of Carey in support of the latter's petition for a discharge, on the ground that malice was the gist of the action in the cause in the Municipal Court (in which cause judgment had been entered and the writ of *Ca. Sa.* issued thereon) and that the fact that malice was the gist of that action could be determined by an inspection of said transcript of the record, and was *res adjudicata*. The objection was overruled, and exception taken, and Carey testified at length in his own behalf, after which Lasher also testified. In the view we take of the case it is unnecessary to comment on the testimony of these two witnesses. Suffice it to say that it was quite conflicting. At the close of the evidence appellant moved to exclude all the testimony offered except said transcript of the record of the Municipal Court, which motion was overruled and appellant excepted. The Court thereupon, on October 19, 1911, ordered and adjudged, it appearing that Carey had made a full, fair and complete schedule of his assets and an account of his liabilities, that Carey be released from arrest and be discharged from the custody of the sheriff and that the costs of the proceeding be taxed against Lasher and that Carey have execution therefor, to the entry of which judg-

ment Lasher excepted and prayed an appeal to this court, which was allowed upon the "arresting creditor" filing within sixty days a bill of exceptions and bond in the sum of two hundred dollars with sureties to be approved by the court.

On November 23, 1911, appellant filed a bill of exceptions and an appeal bond, which bond was approved by the court. The bond was signed by "Charles W. Lasher, by Raymond W. Stevens, his attorney in fact," as principal, and by James W. Stevens, as surety.

When malice is the gist of the action, an insolvent debtor is not entitled to his discharge under the provisions of the "Act concerning Insolvent Debtors." (J. & A. ¶¶ 6198-6233.) *Jernberg v. Mix,* 199 Ill. 254; *First Nat. Bank of Flora v. Burkett,* 101 Ill. 391; *People v. Greer,* 43 Ill. 213. Whether or not malice is the gist of a civil action is to be determined from an inspection of the record in that action; (*Jernberg v. Mix, supra; Biebel v. Kuttnauer,* 147 Ill. App. 627, 629) and particularly from the allegations of the declaration; (*People v. Healy,* 128 Ill. 9; *Penoyer v. People,* 105 Ill. App. 481; *Kellar, Ettinger & Fink v. Norton,* 228 Ill. 356), and, where the action is in the Municipal Court of Chicago, particularly from the statement of claim there filed. *Rex. v. People,* 166 Ill. App. 607. And where malice is the gist of such a civil action the judgment therein is conclusive of the question of malice and is *res adjudicata. Jernberg v. Mix, supra; Biebel v. Kuttnauer, supra; Drygalski v. Thiele,* 163 Ill. App. 290. The term "malice," as used in the Insolvent Debtors' Act, "applies to that class of wrongs which are inflicted with an evil intent, design or purpose. It implies that the guilty party was actuated by improper or dishonest motives, and requires the intentional perpetration of an injury or a wrong to another. * * * The *gist* of an action is the essential ground or principal subject matter, without which the action could not be maintained." *Jernberg v. Mix,* 199 Ill. 254, 256.

Counsel for appellant here contend that from an inspection of the transcript of the record of that cause in the Municipal Court, and particularly of plaintiff's statement of claim, it appears that malice was the gist of the action, that the County Court, on the hearing of Carey's petition for a discharge, erred in admitting testimony on the question of malice, and in not remanding Carey to the custody of the sheriff, after said transcript was introduced and the court had inspected the same.    To this contention counsel for appellee reply that Lasher's statement of claim in the Municipal Court, and particularly the words therein "which checks the defendant cashed and *fraudulently and tortiously appropriated to his own use* and has failed to account therefor," do not show that malice was the gist of the action.    Counsel argue that the cause of action, as shown from said statement of claim, amounts to no more than an action in trover, in which action malice is not the gist.    Citing *Jernberg v. Mix, supra.* Counsel further argue that without the qualifying adverbs "fradulently" and "tortiously" the words "appropriated to his own use" would certainly not convey the idea that the money was taken by Carey with an evil intent, design or purpose, and that, taken together, the words "fraudulently and tortiously appropriated to his own use" cannot be said to sufficiently allege that the appropriation by Carey was made with an evil intent, design or purpose.    We cannot agree with the contention of counsel for appellee.    We think that said words sufficiently allege an evil intent, design or purpose, in other words, malice.    In *Spalding v. People,* 172 Ill. 40, 56, it is said that the word "embezzle" and words *"fraudulently* convert to his own use," as used in section 80 of the Criminal Code (J. & A. ¶ 3624), "mean the same thing.    In both a criminal intent is necessary, but if the acts constituting the embezzlement are *fraudulently* done they are done with *a criminal intent."*    In *Blattau v. Evans,* 57 Ill. App. 311, 315,

in which case the jury found "the defendants guilty of wrongfully and unlawfully converting to their own use the property of the plaintiffs, with the intent to injure and defraud the plaintiffs" it was *held* that the verdict was equivalent to a finding by the jury that malice was the gist of the action. Citing *First Nat. Bank of Flora v. Burkett, supra*. In *Biebel v. Kuttnauer, supra*, the declaration alleged that the defendant "wilfully and fradulently converted the moneys so collected to his own use," and the jury found the defendant "guilty of wrongfully, wilfully and *fradulently* converting to his own use" the money and property of the plaintiffs, "with intent to cheat and defraud the plaintiffs out of the same," and it was *held* that malice was the gist of the action. In the present case the jury found Carey "guilty as alleged in plaintiff's statement of claim." In *Subim v. Isador*, 88 Ill. App. 96, 99, the jury found the defendant "guilty of *false* and *fraudulent* representations and *fraudulently* contracting the indebtedness sued for" and it was *held* that this finding was equivalent to a finding that malice was the gist of the action. In *Bank of Montreal v. Thayer*, 7 Fed. Rep. 622, 625, the allegation of the petition was that the defendant "wrongfully, fraudulently and falsely certified and represented," etc. It was contended that a *fraudulent intent* was not alleged, but the Court held otherwise, saying, "We must give to the term 'fraudulently' as found in the petition, the meaning which the law gives it, and which attaches to it in common usage, to-wit, a deliberately-planned purpose and intent to deceive and thereby to gain an unlawful advantage."

But counsel for appellee further contend that it was never intended that the assignee of a tort judgment should by his purchase acquire the right to imprison the debtor under a *Ca. Sa.* Counsel first argue that the tort complained of by Lasher was not assignable *before* judgment, and, hence, it could not be assigned as respects that wrong *after* judgment. We think that

counsel are in error in their premise and that Lasher could have assigned his cause of action before judgment. "By the common law, actions arising out of torts did not, in general, survive. The statute of this State has materially changed the rule with reference to actions which survive, and it is now the general rule in this country that causes of action arising from torts to property, real or personal, or injuries to the decedent's estate by which its value is diminished, survive, * * * and such causes of action are assignable." *North Chicago St. R. Co. v. Ackley*, 171 Ill. 100, 105; *Leonard v. Springer*, 174 Ill. App. 516, 526. And we are also of the opinion that the judgment was assignable, and that the assignee of said judgment, particularly under the terms of the assignment by which the assignor made said assignee his attorney to "sue out *executions* and other *writs* and take all *lawful ways* for the recovery of the money due," had the legal right to sue out the *Ca. Sa.* and have Carey arrested. "The assignment of a judgment carries with it all incidental or collateral rights, remedies, and advantages, existing at the time of the assignment and then available to the judgment creditor." 23 Cyc. 1422; *Moore v. U. S. Barrel Co.*, 238 Ill. 544, 551. And it has been specifically decided that "the assignee of a judgment in actions in which imprisonment is allowed is entitled to an execution against the person of the judgment debtor." 17 Cyc. 1502; *King v. Kirby*, 28 Barb. (N. Y.) 49; *Dougherty v. Gardner*, 58 How. Pr. (N. Y.) 284.

Counsel for appellee further contend that the order of the County Court discharging Carey was proper and should be affirmed for the reason that the transcript of the record of the cause in the Municipal Court, introduced in evidence in the County Court, failed to show that any *capias* was ever sued out on the judgment. We do not think there is any merit in this contention. The fact of the issuance of a *Ca. Sa.*, and the arrest of Carey, is shown by the allegations of Carey's peti-

tion for his discharge. Nor do we think there is any merit in the further contention that the transcript of the record fails to show that any money was paid to the sheriff for advance board of Carey. Carey, in his petition for discharge does not make any such point, nor does it appear that any attack was made in the County Court on the regularity of the proceedings culminating in his arrest.

For the reasons indicated, we are of the opinion that the County Court, upon making an inspection of the transcript of the record of the cause in the Municipal Court, erred in not dismissing Carey's petition and remanding him to the custody of the sheriff.

After the appeal had been perfected in this court, Lasher and Carey filed their several written motions to dismiss the appeal and those motions were reserved to the hearing. Lasher, after stating that on September 12, 1911, he executed the assignment of the judgment to Raymond W. Stevens and that the writ of *Ca. Sa.* was subsequently sued out thereon, alleged as grounds for his motion that he never signed the appeal bond in this cause, never prayed or procured the allowance of said appeal, never authorized any person to procure or prosecute said appeal, and that since executing said assignment of the judgment he has not had, and has not now, any interest in the proceedings. Carey, as grounds for his motion, stated that the appeal from the judgment of the County Court was allowed upon the "arresting creditor" filing an appeal bond and bill of exceptions within sixty days; that inasmuch as the bond was executed by "Charles W. Lasher, by Raymond W. Stevens, his attorney in fact" appellant has not filed an appeal bond in accordance with the order allowing said appeal; and that there is no power of attorney from Lasher to Stevens authorizing the latter to execute the same. Carey filed suggestions in support of his motion, and counter suggestions in objection to both motions were also filed. Accom-

panying the latter suggestions was an affidavit of Raymond W. Stevens, in which it was alleged that he purchased said judgment against Carey and subsequently, on September 13, 1911, sued out said writ of *Ca. Sa.;* that after the appeal from the judgment of the County Court was allowed he "asked the said Lasher to sign the appeal bond;" that Lasher refused; that "affiant offered to give a bond to said Lasher, indemnifying him against any claims whatever against him by reason of the said appeal, but the said Lasher refused the said indemnity and refused to sign the said appeal bond;" that subsequently affiant, "as attorney in fact of the said Lasher, signed the said bond;" and that affiant "afterwards called this fact to the attention of said C. W. Lasher, who made no objection, but stated in substance that it was satisfactory to him."

After careful consideration we have reached the conclusion that the motions to dismiss the appeal should be denied.

Under the terms of the order of the County Court allowing the appeal, if the appeal bond had been executed in the name of Raymond W. Stevens, the real party in interest, instead of in the name of C. W. Lasher, the nominal party, appellee could have had the appeal dismissed in this court. *Tedrick v. Wells,* 152 Ill. 214; *Union Nat. Bank of Chicago v. Barth,* 179 Ill. 83; *Gates v. Thede Bros.,* 91 Ill. App. 603. Lasher having assigned the judgment to Stevens is in no position to urge a dismissal of this appeal. In *Sumner v. Sleeth,* 87 Ill. 500, 503, it is said: "It has long been the practice of courts of law to look through the nominal parties, to the rights of the real parties in interest, and where a necessary nominal party, either as plaintiff or defendant, fails or refuses to use his name, either in prosecuting or defending an action at law, courts will (upon proper indemnity as to costs and damages) permit the real party in interest to use the name of the nominal party, and that against the protest of the nominal

party." In *Foreman Shoe Co. v. Lewis & Co.,* 191 Ill. 155, 158, it is said: "An equitable owner of a chose in action is entitled, by virtue of such ownership, to bring an action at law in the name of the party having the legal right, for his use. Such legal plaintiff cannot prevent the use of his name in the action, nor can he arrest or discontinue the suit, save on the failure of the usee to secure him against liability for costs." It appears from the affidavit of Stevens that he offered to indemnify Lasher from any liability on said appeal bond. And we do not think that Carey, in view of the language of the assignment of judgment and the power of attorney therein given by Lasher to Stevens, can successfully urge the dismissal of the appeal. Stevens was therein given power by Lasher, in Lasher's name, at Stevens' costs, to "ask, demand and receive, and to sue out *executions* and *other writs,* and take all *lawful ways for the recovery of the money due* * * * on the said judgment." The perfecting of said appeal was a "lawful" and necessary step towards the recovery of the amount of the judgment, and in our opinion Stevens, as attorney in fact for Lasher, had power to execute the appeal bond in Lasher's name. "An undertaking on appeal may be executed by a duly authorized agent or attorney. * * * If the authorization of such agent or attorney is questioned it will be presumed by the appellate court that the court below was satisfied that the agent or attorney was properly constituted as such." 2 Cyc. 840; *Sullivan v. Dollins,* 11 Ill. 16; *Sheldon v. Reihle,* 2 Ill. 519. In *Michigan Southern & N. I. R. Co. v. Day,* 20 Ill. 375, 378, it is said: "It is laid down as a universal principle, that whether the agency be of a special or general nature, that it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the ends and objects of the agency." In *Merrick v. Wagner,* 44 Ill. 266, a general power of attorney, given to an

agent to settle the principal's business and collect all claims due the principal in Illinois, was held sufficient to authorize said agent to sign a replevin bond.    In *State v. Banks,* 48 Md. 513, it was held that a general power of attorney to control and manage property authorized the agent to sign a certain injunction bond. See also *Hemstreet v. Burdick,* 90 Ill. 444; *Davidson v. Dallas,* 8 Cal. 227, 250.

The judgment of the County Court of Cook County is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*