## In re Petition of Pauline Sawick.

### Gen. No. 22,240.

1. EXECUTION, § 302*—*what evidence is admissible to determine whether petitioner maliciously appropriated property.* On a petition to the County Court of Cook county for the release of one held in custody by virtue of a *capias ad satisfaciendum* issued upon a judgment entered in the Municipal Court of Chicago in an action of trover, where there is an inconsistency between the statement of trover with the affidavit attached, on the one hand, and the verdict of the jury on the other, the County Court judge is warranted in permitting the petitioner to introduce evidence showing that the property was purchased by her, partly paid for, lost and the circumstances attending its loss and her willingness to pay the bal-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ance due, for the purpose of determining whether the petitioner maliciously appropriated or converted the property, or whether she was unable to return the property through no fault of her own.

2. EXECUTION, § 293*—*when person petitioning for release from custody should be discharged.* Where, on petition for the release of one held in custody by virtue of a *capias ad satisfaciendum* issued upon a judgment in an action of trover, the evidence shows that the petitioner was not actuated by improper or dishonest motives and that she did not intentionally injure or wrong the plaintiff in trover, a judgment discharging her is proper.

Appeal from the County Court of Cook county; the Hon. JOHN H. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Affirmed. Opinion filed June 27, 1917. Rehearing denied July 13, 1917.

McEWEN, WEISSENBACH & SHRIMSKI, for appellant; HARRY OKIN, of counsel.

No appearance for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment of the County Court of Cook county, discharging Pauline Sawick, appellee (petitioner in the County Court), from the custody of the bailiff of the Municipal Court of Chicago. The appellee was in the custody of the bailiff by virtue of a *capias ad satisfaciendum* issued upon a judgment entered in the Municipal Court in favor of Strelitz Brothers, appellant. On November 8, 1915, appellee made an application in the County Court for a release.

Upon the trial of the petition in the County Court, appellant offered in evidence the original files of proceedings in a certain suit in the Municipal Court entitled *Strelitz Brothers, a corporation, v. Pauline Sawick,* together with the verdict of the jury in that case, and then moved the court to dismiss the petition

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

filed by appellee; which motion was overruled. The appellee then introduced evidence, and at the close of her evidence the appellee was discharged.

The claim is made by the appellant that the record of the proceedings in the Municipal Court of Chicago, in the suit instituted there by appellant against appellee, shows that malice was the gist of the action, and that that record, according to the doctrine of *res adjudicata*, is conclusive in the County Court.

On August 31, 1915, appellant filed in the Municipal Court an affidavit for the replevin of a diamond ring, which affidavit set forth that on September 1, 1913, appellee wrongfully took and detained said personal property. On the same day there was issued from the Municipal Court a writ of replevin, directed against appellee, for the diamond ring. Service of the writ was had upon appellee on September 9, 1915, and a demand made for the property, and a return made "this writ unexecuted as to the within described property, this 9th day of September, A. D. 1915."

On September 15, 1915, appellant filed in the same cause a statement entitled "plaintiff's statement in trover." That statement contains what may be called two counts, the first averring the loss of the ring; that it got into the possession of the appellee by finding and that she has refused to deliver it to appellant, and did "maliciously, wilfully and fraudulently, then and there convert the said ring to her own use, to the damage of the plaintiff in the sum of $400"; second, averring the delivery of the ring to the appellant for hire, under a certain written contract. That contract provided for the payment of $6 per week for fifty weeks, and, in case of a failure to make such weekly payments, appellant might declare the contract ended and take possession of the ring; and further, that any violation of the contract should be considered trover and conversion; that appellee made default in the

payments and maliciously, wilfully and fraudulently converted said property to her own use.

To the "plaintiff's statement in trover" there is an affidavit attached, made by the agent of appellant, in which he recites "that the nature of plaintiff's demand is for the sum of $204, the balance due on account of a certain ring described in plaintiff's statement of claim, which is of the reasonable value of $400," credit to the extent of $196 being allowed to the defendant by reason of payments made on property received from said plaintiff on account thereof, "which said ring was converted by said defendant as set forth in the statement of claim above, and which is hereby made a part of this affidavit."

The case in the Municipal Court was tried on September 15, 1915, and the jury brought in a verdict as follows:

"We, the jury, find the defendant, Pauline Sawick, guilty of having maliciously, wilfully and intentionally, and with intent to injure and defraud the plaintiff, converted to defendant's own use the goods and chattels of the plaintiff, and assess the plaintiff's damages at the sum of $204."

Judgment was accordingly entered on said verdict for $204 and costs.

On September 28, 1915, a *capias* was issued against appellee, which was served upon the appellee on December 23, 1915, the return of which recites that as appellee failed and refused to satisfy the writ the deputy had taken the body of said appellee.

In the instant case, in the County Court, and over the objection of the appellant, evidence was introduced by appellee which showed that on June 4, 1912, at the time she got the ring from appellant she was seventeen years of age; that after signing the contract in question, in which the value of the ring was placed at $400, she had paid $196; that she turned over the ring to a friend of hers, one Miss Schumacher, in order that she

might have it at a dance; that Miss Schumacher allowed some one else to take the ring; that Miss Schumacher let a Mr. Shaw have the ring, and she, the appellee, was not able to get it returned; that she made fifteen or sixteen payments on the ring after she lost it; that she paid altogether $196; that when she gets employment she will pay the balance.

Apparently the trial judge in the County Court, considering the appellee as a minor at the time of the execution of the contract, and considering the terms of the contract, was of the opinion that (in the cause in the Municipal Court) malice was not the gist of the action and so discharged the petitioner.

The law in general is stated in the case of *Jernberg v. Mix*, 199 Ill. 254, by Mr. Justice Cartwright, as follows:

"The term 'malice,' as used in the act in question, applies to that class of wrongs which are inflicted with an evil intent, design or purpose. It implies that the guilty party was actuated by improper or dishonest motives, and requires the intentional perpetration of an injury or a wrong to another. * * * To entitle a defendant to discharge from imprisonment it must appear that the wrong for which the action was brought was not of that character. The gist of an action is the essential ground or principal subject-matter, without which the action could not be maintained."

If we consider the evidence offered by appellee in the County Court as competent, it proves that appellee was not actuated by improper or dishonest motives, and that she did not intentionally injure or wrong appellant, and it follows, therefore, that the judgment of that court was correct.

It is contended, however, by appellant that the evidence offered by appellee in the County Court was incompetent, on the ground that wherever it appears from the pleadings in a civil suit under which an insolvent debtor was imprisoned, that malice is the gist of the action, the judgment in such action is conclusive of the question of malice and is *res adjudicata*.

The suit in the Municipal Court was begun on August 31, 1915, as a replevin suit, and then on September 15, 1915, was changed apparently to a suit in trover. The record does not show any notice of any kind served upon the defendant in regard to the change from replevin to trover. The statement in trover is partly in the form of a common-law declaration and partly in trover. It consists of what purports to be two counts and an affidavit. The second count sets up the writing signed by appellee, which seems to constitute a hiring of the ring for fifty weeks with a promise by appellee to pay $6 per week for its hire and use, with a proviso that in case of a failure to make any weekly payment the contract may be terminated and appellee's interest in the property, and what she has paid concerning it, forfeited, and that appellant may take forcible possession of said property. The affidavit states that the nature of appellant's demand is for the sum of $204, the balance due on account of a certain ring.

Taking the statement in trover and the affidavit together, it is obvious that the claim of the appellant in the Municipal Court was for a ''balance due on account.'' The affidavit states that the ring was of the reasonable value of $400 and that appellee was entitled to credit to the extent of $196, by reason of payments made by appellant. The contract makes no provision for the passing of the title at any time from appellant to appellee. It seems to be a contract providing for the leasing of personal property for a given period of time, for certain compensation, and when taken in conjunction with the phraseology in the affidavit, which undertakes to interpret the contract, seems to be a subterfuge for a sale on the instalment plan. Obviously, there is an inconsistency between the statement in trover with the affidavit attached, considered on the one hand, and the verdict of the jury on the other; and we are of the opinion that under those circumstances the trial judge in the County Court was en-

titled to admit the evidence offered by appellee, in order to determine whether the appellee maliciously appropriated or converted the ring in question.

The court said in *Kellar, Ettinger & Fink v. Norton,* 228 Ill. 356:

"For aught that appears from the declaration in the Superior Court, the failure of appellee to return the property may have resulted from circumstances over which he had absolutely no control. Every averment of the declaration may be true and still the appellee may have been entirely free from any evil intent or purpose."

So in the instant case, for aught that appears in the statement in the Municipal Court, the appellee may have been unable through no actual fault of her own to return the property in question. The judgment should be affirmed.

*Affirmed.*