**Rudolph Abbrassart, Appellant, v. Brunell Bouchard, Appellee.**

**Gen. No. 7,641.**

1. Appeal and error—*proper court to which to take appeal from order of county court dismissing a petition for discharge from a ca. sa. under the Insolvent Debtors' Act.* An appeal from an order of the county court dismissing the petition of a judgment debtor, held under a *capias ad satisfaciendum*, to be released under the provisions of the Insolvent Debtors' Act, is properly taken to the Appellate Court, Cahill's St. ch. 72, ¶ 29, requiring such appeals to be taken to the circuit court, having been repealed by Cahill's St. ch. 37, ¶ 40.

2. Executions—*what constitutes malice within meaning of Insolvent Debtors' Act.* The term "malice," as used in the Insolvent Debtors' Act, implies that the guilty party was actuated by im-.

proper or dishonest motives, and requires the intentional perpetration of an injury or wrong to another.

3. Executions—*sufficiency of evidence to establish prima facie that malice not gist of action in which judgment debtor held under a ca. sa., in proceedings for release under Insolvent Debtors' Act.* Where the declaration in an action for negligence was in seven counts, only one of which made any pretense of charging malice and the action resulted in a judgment based upon a general verdict for plaintiff, the judgment debtor made out a prima facie case that malice was not the gist of the action by introducing in evidence the declaration, instructions, verdict and judgment in such action, with evidence of subsequent friendly relations with the injured plaintiff and his father, sufficient to require his discharge from custody under a ca. sa. as provided in the Insolvent Debtors' Act.

4. Executions—*sufficiency of evidence in proceedings for discharge under Insolvent Debtors' Act from custody under a ca. sa., to show insolvency and making of full schedule of indebtedness by judgment debtor.* Evidence on hearing of a petition for discharge from custody under a ca. sa., presented pursuant to the terms of the Insolvent Debtors' Act, held insufficient to support a finding that the petitioner was insolvent, or that he had made a full, fair and complete schedule of his property as required by the statute.

Appeal by plaintiff from the County Court of Kankakee county; the Hon. Henry F. Ruel, Judge, presiding. Heard in this court at the April term, 1926. Reversed and remanded. Opinion filed July 17, 1926. Rehearing denied September 11, 1926.

T. R. Johnston and C. M. Clay Buntain, for appellant.

Walter J. Nourie and Miller & Streeter, for appellee.

Mr. Presiding Justice Partlow delivered the opinion of the court.

Appellant, Rudolph Abbrassart, was arrested on a writ of *capias ad satisfaciendum* issued out of the circuit court of Kankakee county, in favor of appellee, Brunell Bouchard, a minor, by Walter Bouchard, *prochein ami*. A motion was made in the circuit court

to quash the writ, the motion was denied, and appellant was remanded to the custody of the sheriff. Appellant then filed his verified petition in the county court of Kankakee county under the Insolvent Debtors' Act [Cahill's St. ch. 72, ¶ 4 *et seq.*], alleging that he was in the custody of the sheriff by virtue of a *capias ad satisfaciendum* and was desirous of being released from imprisonment by delivering up all his property not exempt by law, and that malice was not the gist of the action on which the judgment was based. Appellant filed his schedule of property showing assets of $879, and debts of $1,627.60, in addition to the judgment rendered by the circuit court. A hearing was had in the county court without a jury, the court dismissed the petition, and remanded appellant to the custody of the sheriff. The court found that appellant was insolvent; that he had made a full, fair and complete schedule of all of his property; that malice was the gist of the action in the circuit court on which the *capias ad satisfaciendum* was issued; that appellant was not entitled to release under the Insolvent Debtors' Act, and an appeal has been prosecuted to this court.

Section 26, chapter 72 [Cahill's St. ch. 72, ¶ 29], of the statute provides that appeals from orders of the county court in cases of this kind shall be to the circuit court, and appellee has moved to dismiss this appeal on the ground that it was improperly taken to this court. In support of this contention several cases are cited, but upon examination it will be found that they are not in point. In *Groszglass v. VonBergen*, 220 Ill. 340, and *In re Petition of Kitterman v. People*, 181 Ill. App. 682, it was expressly held that section 26, chapter 72 [Cahill's St. 72, ¶ 29], was repealed by section 8 of the Appellate Court Act [Cahill's St. ch. 37, ¶ 40], and that appeals, in cases of this kind, are to the Appellate Court and not to the

circuit court. For this reason the motion to dismiss the appeal will be denied.

It is insisted by appellant that the judgment of the county court is contrary to the law and the evidence; that the court improperly refused to find that malice was not the gist of the action in the circuit court; improperly failed to find that appellant was entitled to release under the Insolvent Debtors' Act, and committed error in remanding him to the custody of the sheriff.

The evidence shows that appellee began suit in the circuit court of Kankakee county against appellant for personal injuries sustained by being struck by an automobile driven by appellant. The declaration consisted of seven counts, six of which charged ordinary negligence in various forms. The second count charged that appellant "was the owner of a certain automobile which he was then and there operating upon one of the public streets in the city of Kankakee, in the county and state aforesaid, and while so operating the same he wilfully and wantonly drove the said automobile to and against the person of the plaintiff who was then and there an infant of the age of six years, by reason whereof the plaintiff was hurled to the ground and run over by said automobile, whereby he received divers wounds, cuts and bruises, to the damage of the plaintiff of $3,000.00." There was a trial by jury and a general verdict was returned for $500 against appellant. Judgment was entered upon the verdict and it was upon this judgment that the *capias* in this case was issued.

In support of his petition for a discharge appellant not only filed a schedule of his property, but he also offered in evidence the record of the proceedings in the circuit court, including the declaration, instructions, verdict of the jury, and the judgment. He also offered evidence tending to show the friendly relations which he claimed existed between him and the

father of the injured boy, and between him and the boy. The question for determination is whether the showing made by appellant was sufficient to entitle him to a discharge under the statute.

Section 5, chapter 77 [Cahill's St. ch. 77, ¶ 5], of the statute, provides: "No execution shall issue against the body of the defendant, except when the judgment shall have been obtained for a tort committed by such defendant, or unless the defendant shall have been held to bail upon a writ of *capias ad satisfaciendum* [*respondendum*] as provided by law, or he shall refuse to deliver up his estate for the benefit of his creditors."

Section 2, chapter 72 [Cahill's St. ch. 72, ¶ 5], of the statute, provides in substance that when any person is arrested or imprisoned upon any process issued for the purpose of holding such person to bail upon any indebtedness, or in any civil action when malice is not the gist of the action, such person may be released from such arrest or imprisonment upon complying with the provisions of the act. The act also provides that the debtor shall make a sworn schedule of his assets and debts; that a hearing may be had on the truth of the schedule, and if the court finds that the debtor has made a full, fair and complete schedule of all his estate and of his debts, that the court shall set out to the debtor such property as may be exempt, and appoint an assignee for the debtor, and that when the debtor shall produce to the court the receipts of the assignee certifying that the assignee has received all of the estate so assigned to him, the court then shall enter an order discharging the debtor.

In order for appellant to be discharged it was necessary for him to prove that malice was not the gist of the action in the circuit court. The term "malice" as used in the Insolvent Debtors' Act applies to that class of wrongs which are inflicted with an evil intent, design or purpose. It implies that the guilty party

was actuated by improper or dishonest motives, and requires the intentional perpetration of an injury or a wrong on another. *Seney v. Knight*, 292 Ill. 206; *Kellar, Ettinger & Fink v. Norton*, 228 Ill. 356; *Jernberg v. Mix*, 199 Ill. 254; *Kitson v. Farwell*, 132 Ill. 327; *In re Murphy*, 109 Ill. 31; *First Nat. Bank of Flora v. Burkett*, 101 Ill. 391; *Fetz v. People*, 239 Ill. App. 250.

In many cases it is an easy matter to determine from the pleadings and evidence whether malice is or is not the gist of the action. In some cases the declaration consists entirely of wilful counts, and if the evidence sustains the declaration there can be no question but what malice is the gist of the action. *Fetz v. People, supra.* In other cases, however, the declaration contains some wilful counts and others which charge ordinary negligence only, and in these cases it is sometimes difficult to determine whether a general verdict was based upon the counts charging malice or whether it was based on other counts in which malice was not charged. In this class of cases it has been held that the court may hear evidence in order to determine whether or not the gist of the action was malice. *In re Petition of Sawick*, 207 Ill. App. 100; *In re Petition of Meinhardt*, 202 Ill. App. 266.

In *Jernberg v. Mix, supra*, it was held that where there are several counts, and malice is the gist of only one of them, a judgment upon a general verdict is not conclusive that there was malice, or that the party was actuated by improper or dishonest motives. The debtor is not estopped by the judgment to show that malice was not the gist of the action against him, but he may show that the verdict and judgment were based upon a count where malice was not the gist of the action. If issues are made upon all counts of the declaration, including the one of which malice is the gist, a judgment upon a general verdict is responsive to such issues and prima facie establishes that malice

was the gist of the action, and the burden is on the debtor to prove the contrary.

In *Kitson v. Farwell, supra,* the declaration contained several counts, the first of which was an action for deceit growing out of false representations, and the other counts charged only a breach of promise to pay for goods bought. There was a judgment based upon a general verdict in favor of the plaintiff, and it was held that the judgment was not conclusive evidence of fraudulent representations, or fraud, or deceit, and that the defendant on application for discharge from arrest, under the judgment, was not estopped from showing that he was guilty of no fraud.

In *In re Hinson's Application,* 162 Ill. App. 121, it was held that if a general verdict is returned under several counts of a declaration, the gist of some being based on malice, and the others containing no such an allegation, if the prima facie case as made by the creditor was that the general verdict was predicated upon the counts of which malice was the gist, the burden was on the debtor to show that such verdict was rendered upon the counts of which malice was not the gist, and in the absence of any evidence being adduced by the debtor that such was the case, he cannot avail of the provisions of the Insolvent Debtors' Act.

In *Levy v. Schikowski,* 239 Ill. App. 447, the declaration consisted of two counts and contained the following language: That the defendant by carelessly, wilfully and negligently driving, operating and managing his automobile that by and through such wilfulness, carelessness and negligence, the defendant then and there wilfully, wantonly and carelessly operated said automobile so that the same then and there ran and struck the plaintiff. A judgment for $1,500 was recovered. A *capias* was issued, the defendant was arrested, he filed a petition in the county court under the Insolvent Debtors' Act, and offered in evidence, on the hearing, the declaration, the verdict and the

judgment. The court found that malice was not the gist of the action and discharged the defendant. The Appellate Court affirmed the order of discharge and on page 451 said: "As the declaration, verdict and judgment do not necessarily show that the defendant in the tort case was guilty of wilful negligence, as they, in fact, may have involved only the finding that the defendant was guilty of ordinary negligence (*Guianios v. De Camp Coal Min. Co.*, 242 Ill. 279), which does not include malice, the deduction cannot logically be made that malice was the gist of the action. Of course, ordinary negligence *per se* does not in any way imply malice. It may well be, for aught that appears in the record that was submitted to the county court, that the jury in the tort case based its verdict solely on a finding that the defendant was guilty of ordinary negligence; and, if they did so, it follows that malice was not the gist of the action. To reiterate, as the gist of an action, having in mind the meaning of those words as used in the Insolvent Debtors' Act, connotes that without which an action cannot be maintained, and as a verdict based on simple negligence—that is, conducted without malice—may be supported by a declaration which charges wilful negligence, it follows that a charge of wilful negligence does not necessarily import malice. Even in the *Jernberg* case, where there were three counts, one of which alleged malice and two of which did not, the court said that the judgment was not conclusive, and that the petitioner had the right to put in evidence to show that the verdict and judgment were based upon the counts where malice was not the gist of the action. In the instant case, there are two counts, neither of which, it should be noted, necessarily involves malice; and in such a case, bearing in mind that the petitioner is entitled to every reasonable presumption in his favor, the matter involved being one of imprisonment, it is only reasonable to hold that the introduction of the declaration, verdict

and judgment made out a prima facie case in his favor to the effect that malice was not the gist of the action, and put the burden of introducing evidence to the contrary upon the judgment creditor. When the petitioner had offered in evidence the declaration, verdict and judgment, and it was obvious to the court that the cause of action was one which could be maintained without malice being the gist of the action, it was not its duty to enter upon conjecture and hold that which the evidence did not prove, that malice was the gist of the action. The petitioner was entitled to the benefit of the uncertainty. Although the Insolvent Debtors' Act binds him to prove a negative, that malice is not the gist of the action, we think he has done so when he proves that the court, with the record before it, cannot, without dealing in conjecture, hold the contrary. Further, the court said in the *Kitson* case, *supra*, when considering the Insolvent Debtors' Act, 'a judgment is conclusive only of what it necessarily and directly decides,' and applying that principle here, it must be said that the judgment in the tort case, as offered in evidence, does not necessarily and directly decide that malice was the gist of the action.''

In the case at bar, the declaration consisted of seven counts, only one of which made any pretense of charging malice. There was a general verdict in favor of appellee. As was held in the *Levy* case, when appellant offered in evidence the declaration, instructions, verdict and judgment, together with evidence of appellant's friendly relation with the injured boy and his father, it was obvious that the cause of action was one which could have been sustained without finding that malice was the gist of the action. It was not the duty of the court to enter upon conjecture, or speculation, and hold that which the evidence did not prove, namely, that malice was the gist of the action. Appellant was entitled to the benefit of that uncertainty. The burden was upon appellant to prove that malice

was not the gist of the action, but as was held in the *Levy* case, he did so when he produced such evidence that the court, with the record before him, could not, without dealing in conjecture, hold the contrary. The jury as readily might have found a verdict based on any one of the six counts which did not charge malice, as to find a verdict upon the second count which did charge malice. Under this state of the proof the county court was in error in holding that malice was the gist of the action and in refusing to discharge appellant under the Insolvent Debtors' Act.

Appellant offered in evidence his sworn schedule of property showing assets of $899, and liabilities of $1,627.60. Some time prior to the accident he had been employed as a railroad switchman at $6.64 per day. Later he took a position as assistant conductor at $6.16 per day of eight hours, with time and a half for overtime. During 18 weeks in the latter part of 1923, and the early part of 1924, he received $837.37, or $46.96 per week, or $180 per month. He received $97.72 at one time for two weeks work. At another time he received $124.73 for a like period, and at other times $101.51, $114.09, and $100.67. There is no evidence as to how much he earned during 1925 or 1926, other than $6.16 per day. He bought a Studebaker automobile for $1,579, and a radio for $200. He paid $300 for furniture, and bought a gas range for $160. There is a conflict in the evidence as to whether all, or a part, of these purchases were made before or after the accident. Appellee claims they were all made after the accident, and appellant claims that only the last one was made after the accident. There is some testimony relative to certain money which appellant won in a baseball pool; that he paid an average of $100 a week to a building and loan association; that he had stated he would pay 10 times the amount of the judgment to escape its payment, and that he had already paid over $200 attorney's fees

in the case. Under all the evidence as to the financial condition of appellant, the court was in error in holding that he was insolvent, and that he had made full, fair and complete schedule of all his property as required by the statute.

The judgment will be reversed and the cause remanded for further proceedings in accord with the views herein expressed.

*Reversed and remanded.*