**Philipp Lips, Administrator of the Estate of Theodore Bierbaum, Deceased, Appellee, v. Chicago City Railway Company, Appellant.**

**Gen. No. 22,463.**

1. Carriers, § 479*—*when verdict for plaintiff sustained in action for ejection of passengers.* In an action to recover damages for the wrongful death of plaintiff's intestate, alleged to have been caused by the act of defendant street railway's conductor in forcing him from the street car, evidence examined and its weight *held* not manifestly against a verdict for plaintiff.

2. Carriers, § 464*—*when statement by another to conductor responsible for death of passenger is admissible.* In an action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the act of defendant street railway company's conductor in forcing the intestate from defendant's street car whereby the intestate fell and received the injury which resulted in his death, evidence of a statement of plaintiff, who was present, made to the conductor immediately after his intestate fell and as a consequence of such fall, is admissible.

3. Evidence, § 277*—*when photographs are inadmissible in personal injury action.* In an action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the act of defendant street railway company's conductor in forcing the intestate from the street car, photographs purporting to show the positions occupied just before the accident by the intestate, the conductor and plaintiff, who was present on the car, are properly

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

excluded where it is not shown that the photographs were an exact reproduction of the position of such persons at the time of the accident.

Appeal from the Circuit Court of Cook county; the Hon. VICTOR P. ARNOLD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Affirmed. Opinion filed January 30, 1918. *Certiorari* denied by Supreme Court (making opinion final).

BENJAMIN F. RICHOLSON and WATSON J. FERRY, for appellant; W. W. GURLEY and J. R. GUILLIAMS, of counsel.

DAY & GUENTHER, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

Appellee, Philipp Lips, as administrator of the estate of Theodore Bierbaum, deceased, brought suit under the statute to recover damages alleged to have been sustained by the widow and next of kin of his intestate, through the negligence of the appellant. The declaration contains three counts, each of which charges, substantially, that a conductor of appellant, without just cause, and while Bierbaum (the deceased) was exercising due care for his own safety, negligently pushed him off one of appellant's street cars and caused him to be so seriously injured that he died the next day. In the trial court the jury brought in a verdict of $3,500 against the appellant (Chicago City Railway Company), and, judgment being entered thereon, this appeal was taken.

The intestate, Theodore Bierbaum, lived at 1958 Clybourn avenue, near Racine avenue; was 67 years of age; about 5 feet 4 inches tall, weighed 110 to 112 pounds, and was, by occupation, a cigar maker. The plaintiff (administrator) is the son-in-law of the intestate's widow, having married her daughter, who is the stepdaughter of the deceased. Early in the afternoon of Sunday, March 3, 1912, the day of the acci-

dent, plaintiff and Bierbaum (the deceased) walked to
Larrabee street and thence to Clybourn avenue, where
they boarded a northbound car designated "Through-
Route Car Number 2" of the large "Pay-as-you-
enter" type. The evidence of the plaintiff is that
after they got on the car Bierbaum paid their fares
and they sat down on the long seat on the right, or
east side of the car; that they wished to get off at Ra-
cine avenue; that at Osgood street, two blocks before
Racine is reached, they got up from where they were
sitting and walked to the rear door where the conduct-
or was standing; that Bierbaum opened the door with
the plaintiff standing by him and asked the con-
ductor to let them off at Racine avenue; that the con-
ductor nodded his head and they stood there until
they got to Racine avenue; that the conductor gave no
signal to stop and, as they passed Racine avenue, Bier-
baum and the plaintiff stepped out on the platform
and Bierbaum said to the conductor, "You know we
want to get off on Racine avenue, why didn't you
stop?", and pulled the bell cord; that the conductor
said, "* * * Greenhorns! You have no right to
pull that rope; I am running this car; I am the boss";
that by that time the car slackened its speed; that the
conductor then rang the bell twice and the car went
on; that after the conductor rang the bell twice, Bier-
baum said to the conductor, "Now conductor, I am
going to make it hot for you. I am going to report
you to the company"; that he, the plaintiff said, "I
know his number; that is what we are going to do";
that the conductor said, "I don't care what you do,
Greenhorns! I am the boss and I am running this
car"; that the plaintiff responded, "Conductor, here
don't get so excited, calling an old man 'Greenhorn'
right away; maybe the old man is right, or wrong, but
if he is wrong, you ought to excuse the old man, but I
think he is right, of course. He told you he wanted to
get off on Racine avenue, and I think he had a right

Lips v. Chicago City Ry. Co., 209 Ill. App. 332.

to pull the alarm there''; that when the car was stopped at the railroad tracks (C. M. & St. P. Rd.), the conductor, Bierbaum and the plaintiff were, all three, on the rear platform; Bierbaum in the center and the plaintiff on the east side of the platform, nearest to the outside of the car, and the conductor on the other side of Bierbaum; that he, the plaintiff, got off slowly and on the way going off said, ''* * * of conductors; they think they can do what they please''; that when he said that, Bierbaum was still on the platform and he, the plaintiff, was down on the ground; that after he had been on the ground ''two minutes'' he saw Bierbaum having an argument with the conductor; that the conductor said, ''Now old man, you want to get off, get off or I push you off''; that he, the conductor, grabbed the old man somewhere around the shoulders or around the body and the old man ''fall off right back on his head'' and lay there on the ground unconscious, like a dead person, with his feet lying on the car track under the step; that he, the plaintiff, then walked over to the conductor and said, ''Now you see what you done, pushing the old man, 67 years old, off the platform; ain't that a shame, and by God he is dead; will you please come down and help me pick him up?'' that the conductor went down on the lower step, ''sized up the old man'' and said, ''He ain't dead, he is only shamming''; that the conductor then pushed Bierbaum's legs from the car track, went back on the main platform, rang the bell twice and the car went on over the railroad tracks.

The evidence of the plaintiff as to its chief elements is corroborated by two witnesses, one Kosche and a Mrs. Busse. The evidence of Kosche is that he was sitting in the second seat of the car, on the right side in the rear; that when the car crossed Racine avenue, he heard loud talking; that when he turned around he saw the conductor having an argument with an old man; that when the car stopped the conductor

took the old man by the arm and said, "You want to get off and now get off" and so he brought him down to the lower step; that the conductor went to the lower step and brought the man down to the ground and then went up and pulled the cord of the car and it went ahead; that the conductor "grabbed him so he was master of him; he brought him down with force"; that he did not see whether the man fell to the ground; that he didn't see anybody beside Bierbaum and the conductor; that there might have been somebody but he didn't pay any attention to anybody else.

The evidence of Mrs. Busse is that she was walking along Clybourn avenue and heard loud talking on the car; that she heard the conductor say, "What did you pull that bell for?"; that he (apparently meaning Bierbaum) said, "I told you why didn't you stop when I told you to"; that the conductor then said, "If you don't shut up, I will push you off"; so "he stopped the car and pushed the old gentleman off"; that she was walking along going to her daughter's house; that the plaintiff was on the street when the old man was pushed off; that the plaintiff said to the conductor, "Now see what you have done, you have pushed the old gentleman off, and you have killed him"; that the conductor said, "But he is only shamming, he is not dead"; that the plaintiff then said, "Will you come down and help me pick up the old gentleman?"; that the conductor stepped down on the lowest step, took his foot and kicked the old gentleman's feet away and then gave the signal to the car to go ahead.

The defendant's theory, which is supported by the testimony of the conductor and two passengers who boarded the car at Larrabee street, is to the effect "that neither plaintiff nor Bierbaum notified the conductor of their desire to get off at Racine avenue, or requested him to have the car stopped at that place, and that they did not go to the rear platform until it

had crossed that avenue, and when they did so, one, or both, of them rang the bell; that after the car had reached and was stopped at the railroad tracks, Bierbaum was on the step, plaintiff standing on the east edge of the platform and the conductor further west of him; that before the plaintiff got off he applied to the conductor a vile epithet, struck him in the face, turned to get off and, in so doing, knocked Bierbaum from the step to the ground.''

It is claimed by the appellant that the testimony of the plaintiff, given at the coroner's inquest, is some evidence that he struck the conductor, and, to a certain extent, it bears that construction, although it is, as evidence, upon close analysis, unsatisfactory as a source of any inference of value.

The evidence of the conductor is that when the car stopped at the railroad track and the plaintiff and Bierbaum were going to get off, that Bierbaum was down on the step and the plaintiff was standing in the doorway; that he asked them to get off so he could "run the railroad crossing"; that the plaintiff used an oath, struck him in the face, hitting the peak of his cap, and knocking it down over his face, stunning him; that he, the plaintiff, then jumped off the car and he then saw that Bierbaum was lying on the ground; that he did not, at any time, put his hand on Bierbaum, or push him in any way. He, also, denied the conversation testified to by the plaintiff as taking place after Bierbaum was on the ground.

The evidence of the witness Bomzel is to the effect that the plaintiff struck the conductor in the forehead, or peak of his cap and as he, the plaintiff, turned around to get off the car, he pushed Bierbaum, who was on the steps, off the car; that the conductor afterwards came into the car and she noticed blood on his handkerchief, with which he was wiping his face. Likewise, the evidence of the witness Palm is to the effect that the conductor rang the bell and the car

stopped, and he said, "Now get off, get off"; that the
young man (plaintiff) hit the conductor in the face and
turned around and jumped off, and, with the same arm
that he hit the conductor, "with the same elbow he
come and strike the old man with the right elbow and
knocked him right down"; that the conductor did not
hit or push Bierbaum in any way. The evidence of
the witness Dobrick is to the effect that a man was get-
ting on the car at its rear end, was on the step facing
the car that he fell off; that after him followed a
younger man (apparently meaning Lips); that the
man who followed was a man in the thirties, and that
the one who fell was the older of the two. Two other
witnesses, Dennison and the motorman, testified that
the nose of the conductor had been injured.

Counsel for appellant have pointed out a series of
alleged improbabilities in the testimony introduced on
behalf of the plaintiff. In such a case, discrepancies,
of course, are inevitable. Even though each witness
undertook to tell the whole truth, there would not
necessarily be entire uniformity in their evidence.
Whether the conductor pushed or knocked Bierbaum
from the car or whether the plaintiff struck the con-
ductor, and, himself, in getting off, knocked Bierbaum
from the car, are, of course, the important questions.
If the evidence introduced on behalf of the appellee—
that of Lips, that the conductor grabbed Bierbaum
somewhere around the body; that of Mrs. Busse that
the conductor stopped the car and pushed Bierbaum
off; that of Kosche, that the conductor grabbed Bier-
baum so that he was master of him and brought him
down with force—is to be believed, in preference to
that of the conductor, Bomzel and Dobrick, as to what
happened, then the jury were justified in finding ap-
pellant liable. It is evident the jury did not believe
the witnesses who testified that Lips struck the con-
ductor, and in getting off the car knocked or pushed
Bierbaum off; and in view of the record before us,

we are not justified in concluding that they were evidently of so reliable a character and so evidently told the truth that the jury were not warranted in failing to believe them and giving credit to the testimony of Lips, Kosche and Busse.  Of course, it is our function to determine whether the verdict is justified by the evidence; and, recognizing the duty which that involves, we are of the opinion, upon a careful consideration of all the evidence, that the verdict rendered is not manifestly against the weight of the evidence.

It is further contended by the appellant that the court erred in admitting in evidence the statement of the plaintiff—which was uttered after Bierbaum was off the car and on the ground—"Now you see what you done, pushing the old man 67 years old off the platform.  Ain't that a shame, and by God he is dead.  Will you please come down and help me pick him up?"; and the response of the conductor, "He ain't dead, he is only shamming."  The tendency of the courts seems to be to admit statements which are contemporaneously close to and seem spontaneously to spring from the transaction, as in this case, from the tragedy itself.  It is true that the ejaculation of the plaintiff was, in actual point of time, subsequent to the concussion received by, and which caused the death of, Bierbaum.  But it seems reasonable to assume that what was said, psychologically considered, was involuntarily inspired by the circumstances, and was not the result of premeditation and deliberate purpose.  "The better reasoning is that the declaration, to be a part of the *res gestæ,* need not be coincident in point of time with the main fact to be proved.  It is enough that the two are so clearly connected that the declaration can in the ordinary course of affairs be said to be the spontaneous explanation of the real cause."  *Leahey v. Cass Ave. & F. G. Ry. Co.,* 97 Mo. 172.  "The modern doctrine has relaxed the ancient rule that declarations, to be admissible as part

of the *res gestæ*, must be strictly contemporaneous
with the main transaction. It now allows evidence of
them, when they appear to have been made under the
immediate influence of the principal transaction, and
are so connected with it as to characterize or explain
it." *Vicksburg & M. R. Co. v. O'Brien,* 119 U. S. 99;
Wigmore on Evidence, sec. 1750. That statement of
the law seems to be consistent with all the decisions
of our Supreme Court on that subject. The case of
*Mathes v. Chicago City Ry. Co.,* 178 Ill. App. 34, mere-
ly decides that the statement offered in evidence was
properly excluded because it was made too long a time
after the accident to which it pertained.

It is further contended by appellant that the trial
court erred in excluding two photographs which pur-
ported to portray the positions occupied by Bier-
baum, Lips and the conductor, on the rear platform,
after the car reached and was stopped at the railroad
tracks, and just before the accident occurred. The
conductor testified, when asked if he knew anything
about the position of the man standing on the step,
corresponding with the position of Bierbaum at the
time of the accident, "I didn't exactly see his posi-
tion; he was down on the step." "I don't know
whether that was his position or not." A careful an-
alysis of the evidence, on that subject, leads us to the
conclusion that it does not sufficiently prove that the
photographs were an exact reproduction of the actual
physical relations—referring to the time of the acci-
dent—of the three men in question. The space in
which, at the time, they were, was not large, and, in
order that the photographs should be instructive and
not in the least misleading, they must be shown to be
a reproduction of an entirely accurately established
physical condition. The admission of a photograph
of a slightly varied physical situation might serious-
ly endanger the rightful effect of all the truthful testi-
mony in the case; being necessarily *ex post facto* evi-

dence, it should be rigidly exact. The mere doubt of the conductor, "I don't know whether that was his position or not," was enough to justify the rejection. The court said, in *Chicago & E. I. R. Co. v. Crose,* 214 Ill. 610: "It needs no argument to show that a variation of a few feet in the location of the cars might make a vast difference as to whether the view was obstructed at the time of the injury or not"; and so, here, a variation of a few inches in such a limited space might make a vast difference in the seeming relations of the participants, and make a great change in the inferences to be drawn therefrom.

Finding no material error in the record the judgment is affirmed.

*Affirmed.*