WILLIAM GUIANIOS, Admr., Appellee, *vs.* THE DeCAMP COAL MINING COMPANY, Appellant.

*Opinion filed October. 26, 1909—Rehearing denied Dec. 9, 1909.*

1. VARIANCE—*in tort the plaintiff may prove part of charge if averment is divisible.* In tort the plaintiff may prove part of his charge if the averment is divisible, and proof of a part of the allegations, if sufficient to establish a case, will sustain a judgment.

2. SAME—*proof of mere negligence is sufficient though declaration charges willfulness.* If the evidence in an action for damages for negligently causing the death of the plaintiff's intestate shows that the death was caused by the negligence of the defendant, a recovery may be had though the declaration charges that the acts complained of were "negligently, carelessly and willfully" done.

3. NEGLIGENCE—*when question of defendant's negligence is for the jury.*   Whether the defendant mining company was negligent in not providing a safer method of stopping loaded cars on a sloping side-track than by the use of brakes and blocks is a question of fact for the jury, where there is evidence that while it was defendant's custom to let the loaded cars run down the track, neither brakes nor blocks would always keep them under control.

4. SAME—*what does not show contributory negligence.*   The fact that an employee of the defendant, after discovering he could not stop a loaded car with brakes or blocks, shouted a warning to the men ahead, including plaintiff's intestate, who were pushing another car, does not show contributory negligence on the part of plaintiff's intestate in not getting out of the way before the cars collided, where some of the men who were with him testified that they did not hear the warning or notice the other car approaching.

5. APPEALS AND ERRORS—*when questions of negligence and contributory negligence are settled.*   Where the questions of the defendant's negligence and the contributory negligence of plaintiff's intestate were controverted questions of fact, the judgment of the Appellate Court is conclusive of such facts in the Supreme Court.

6. EVIDENCE—*what evidence is properly refused.*   In an action against a mining company for negligently causing the death of a section man of a railroad company, who was repairing side-tracks at the mine, proof that at other times when the railroad company made repairs on such tracks the work of the mining company was allowed to continue without interruption is not admissible, where it is not charged that the continued operation of the mine while the repairs were being made caused or contributed to the injury.

7. ALIENS—*an action for negligent killing lies though deceased and next of kin are aliens.*   An action may be brought to recover damages for negligently causing death even though the deceased was an alien and the suit is brought for the benefit of his parents and brothers and sisters, who are non-resident aliens.   (*Kellyville Coal Co.* v. *Petraytis*, 195 Ill. 215, followed.)

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. J. E. DUNNEGAN, Judge, presiding.

C. H. BURTON, for appellant.

GEORGE I. HAIGHT, and D. H. MUDGE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought by appellee in the circuit court of Madison county to recover damages, under the statute, to the next of kin by reason of the death of Gust. Antonopoulos, killed by a railroad car through the alleged negligence of appellant. There was a plea of general issue to the declaration, and on a trial in the court below a verdict and judgment for $2000 was rendered. The case was taken by appeal to the Appellate Court, where the judgment was affirmed. This appeal follows.

Appellant operates a coal mine in Madison county, in this State. The Wabash Railroad Company maintained tracks over which to deliver and receive cars from the mine. West of the main track at the mine were four coal tracks, which were numbered from the west, 1 to 4, having a grade downward south and passing over a sub-switch track onto the main switch track and thence to the main track. The morning of September 14, 1907, the railroad company sent three crews of section men (Antonopoulos being a member of one) to replace a car that had jumped the switch track and to repair the damage to the track caused by the derailing. After this was finished the men were put at other repair work at the switch track. In order to do this work it became necessary to move a car of slack which then stood at the switch, with its north trucks on track 4. At this time there was also a loaded car just north of the switch on track 2, the south end of which was just north of the north end of the car to be moved on said track 4. These two tracks so converged that if the car on track 2 were pushed south on the track it would strike the car on track 4. To move the car on track 4 the men were distributed along the sides to push, a pinch-bar also being used. Antonopoulos was on the west side of the car, facing north, with his shoulder to the car, pushing, and occupied such a position that his view up track 2 was obstructed

by the car located thereon. While the men were so work-
ing, another car of coal was started south from the works
at the top of the mine down track 2. An employee of ap-
pellant was on the car and tried to set the brakes, but they
would not hold. He then got down and tried to stop the
car by putting blocks of wood under the wheels, but this
also failed, and the car rolled down and struck the car on
track 2 with such force as to push its corner against the
car that was being moved on track 4. Antonopoulos was
caught between the corner of the last mentioned car on
track 2 and the car which he was pushing, and received in-
juries from which he died in a few hours. When the man
in charge of the moving car saw that it was beyond his
control he cried out to the men of the group in which de-
cedent was working. Some of them heard the cry, but An-
tonopoulos did not appear to.

The declaration charged that the appellant "negligently,
carelessly and willfully" did the things complained of, caus-
ing the death of Antonopoulos. The proof does not tend
to show that the act was willfully done, and counsel for
appellant argues that there was a variance between the
proof and the declaration, and that therefore the motion
made at the close of plaintiff's evidence for an instruction
to find appellant not guilty should have been granted. In
tort the plaintiff may prove a part of his charge if the
averment is divisible, and proof of a part of the allega-
tions, if sufficient to sustain a case, will sustain a judgment.
(*City of Joliet* v. *Johnson,* 177 Ill. 178; *Wabash Railroad
Co.* v. *Billings,* 212 id. 37; *City of Rock Island* v. *Cuinely,*
126 id. 408; *New York, Chicago and St. Louis Railroad
Co.* v. *Blumenthal,* 160 id. 40.) In this case, if the proof
showed that the act was caused by the negligence of ap-
pellant, recovery could be had even though the negligence
was not wanton or willful.

It is further contended that the instruction to find ap-
pellant not guilty should have been given because there is

no evidence to support the charge of negligence by appellant. The evidence showed that while it was the custom to bump loaded cars onto the down-grade, as was done here, neither the brake nor blocks used would always hold them under control. Whether appellant was negligent in failing to furnish a safer mode of stopping moving loaded cars we think on this evidence was a question for the jury. Considered by itself, this evidence fairly tended to support the allegations of the declaration, and the instructions for the defendant were therefore properly refused by the trial court. *Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206, and cases there cited.

It is further contended that appellant should not be held guilty, because its employee on the moving car, after finding that he could not control it, shouted a warning to the workmen, and the deceased was so situated that had he looked he could have seen the moving car and should have heard the warning. While some of the men working with deceased in pushing the car heard the warning, others did not, and the first notice they had of the danger was given by the cars bumping together. The question whether decedent was guilty of contributory negligence on these facts was properly submitted to the jury. (*Petersen* v. *Elgin, Aurora and Southern Traction Co.* 238 Ill. 403; *Pell* v. *Joliet, Plainfield and Aurora Railroad Co.* 238 id. 510.) On the state of the record in this case the question of negligence of appellant and the contributory negligence of the decedent were controverted questions of fact, and the judgment of the Appellate Court affirming that of the trial court precludes us from considering such controverted facts. *Reiter* v. *Standard Scale Co.* 237 Ill. 374, and cases cited.

The further contention is made that the trial court erred in refusing to permit appellant to make proof that at various times before the accident the Wabash company had made repairs and alterations on the track in question in the vicinity of the mine, and that while such work was going

on the mine was not required to cease work but continued in operation. We think this evidence was properly refused, as the charge in the declaration was not that the continued operation of the mine while work was being done on the track caused or contributed to the injury.

The further contention is made that the instruction given for appellee as to the measure of damages was erroneous. The instruction complained of was approved by this court in *Calumet Electric Street Railway Co.* v. *VanPelt,* 173 Ill. 70, and cases there cited.

It is further insisted that the deceased was an alien,—a citizen of Greece,—and that this suit is for the benefit of his parents, brothers and sisters, who are not citizens of this country but reside in Greece, and that there should be no recovery under our statute in favor of these non-resident aliens. Counsel admits that in *Kellyville Coal Co.* v. *Petraytis,* 195 Ill. 215, this court, after reviewing the authorities, held the contrary, but insists that we should reverse that ruling because of the recent ruling of the United States Supreme Court in *Maiorano* v. *Baltimore and Ohio Railroad Co.* 213 U. S. 268. In that case the deceased was killed in Pennsylvania, and the Supreme Court of that State has consistently held that under its statute non-resident alien relatives could not recover. The United States Supreme Court, in deciding that case, followed the general rule of that court that the construction of a State statute by the highest court of such State must be accepted by the United States courts. Manifestly, under that decision, if this case were taken to the United States Supreme Court that court would follow the ruling of this court on this question.

We find no reversible error in the record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*