Harry S. Streeter, Administrator of the Estate of Burry J. McGann, Deceased, Appellee, v. Calista Humrichouse, Appellant.

Gen. No. 8,270.

Opinion filed February 17, 1931. Rehearing denied May 29, 1931.

Mann & Coleman and John A. Mayhew, for appellant.

J. Bert Miller and W. R. Hunter, for appellee.

Mr. Justice Boggs delivered the opinion of the court.

An action on the case was instituted by appellee against, appellant in the circuit court of Kankakee county to recover pecuniary damages alleged to have been sustained by reason of the death of appellee's intestate in a collision between appellant's automobile and a switch engine on which appellee's intestate was riding.

State highway 17 runs in an easterly and westerly direction and, in the City of Kankakee, is known as Court Street. The, Cleveland, Cincinnati, Chicago & St. Louis Railway Company's main track and a parallel switch track cross Court Street, run in a northwesterly and southeasterly direction. Burry J. McGann, appellee's intestate, was in the employ of said railroad as a switchman.

On September 23, 1927, appellee's intestate, with Joe Tooper and N. L. DuFresne, two other switchmen, had been doing some switching south of Court Street, and were returning on the engine to the yards on the north side of said street. The engine in question was backing in a northwesterly direction, the tender or tank being to the front. McGann and the two other switchmen were riding on the footboard on the tender. Appellant was riding in an automobile driven by her son, going in an easterly direction on Court Street. Said automobile and engine collided on the crossing, and appellee's intestate received injuries from which he died.

The declaration as filed contained fifteen counts. At the close of appellee's evidence the court directed a verdict on the first, third and fourth counts.

The second, seventh, eighth, tenth, twelfth, fourteenth and fifteenth counts aver due care on the part of appellee's intestate, and general negligence on the part of appellant. The fifth count charges that appellant negligently drove her automobile across the tracks of said railroad in excess of ten miles per hour, etc. The sixth, ninth and thirteenth counts charge wilful and wanton conduct in the operation of said car. The eleventh count charges that appellee, through her agent and servant, drove said automobile at a speed greater than was reasonable and proper, having regard to the traffic and use of the way.

To said declaration appellant filed a plea of the general issue. A trial was had, resulting in a verdict and judgment in favor of appellee for $10,000. To reverse said judgment, this appeal is prosecuted.

It is first insisted that the court erred in admitting in evidence certain photographs purporting to show said crossing, on the ground that the evidence failed to disclose that the conditions were the same at the time the photographs were taken as at the time of said collision.

There was a garage located on the south side of Court Street, the northeast corner of which was 71 feet from the center of the track on which said engine was running. The testimony of appellant's witnesses is that automobiles were parked between the garage and said track at the time of the collision, which obstructed the view of the driver of appellant's car as it approached said crossing. On the part of appellee the testimony was to the effect that there were no automobiles so parked at the time in question. The photographs disclosed certain automobiles, which it is conceded were not placed or stationed in the same relative position as the automobiles were at the time of said collision.

Counsel for appellee insist that such variation is not of sufficient importance to render the admission of said photographs erroneous, and also insist that even if there was error in said ruling, appellant not having abstracted said photographs, she is not in a position to raise this question.

Inasmuch as the testimony of appellee's witnesses disclosed that the automobiles were not in the same position as on the day in question, appellant is in position to raise this question, even though the photographs are not abstracted. The court erred in admitting said photographs. *Chicago & Eastern Illinois R. Co. v. Crose,* 214 Ill. 602–611; *Lake Erie & Western R. Co. v. Wilson,* 189 Ill. 89–96; *Lips v. Chicago City Ry. Co.,* 209 Ill. App. 332–340; *Althoff v. Illinois Cent. R. Co.,* 227 Ill. App. 417–419.

It is next insisted that the court erred in refusing to direct a verdict on the wilful and wanton counts, motions to that effect having been made at the close of appellee's evidence and again at the close of all of the evidence. In this connection it is insisted that the evidence wholly fails to sustain said counts and, there being a general verdict, the judgment must be reversed.

Tooper testified on behalf of appellee that he was on the left side of the footboard on said engine; that "as we approached State route 17 I saw two machines that came from the south or from the east. They stopped at the crossing, and there was this Dodge roadster that had come from the west that did not stop. . . . When I first noticed this Dodge roadster he was just about in front of that oil station, possibly 110 feet. We were right on the frog of the cross-over, around 60 feet from the crossing. . . . In my opinion this Dodge roadster was traveling between 30 and 35 miles an hour when I first saw it. The engine was traveling about 15 miles an hour. When we were right at the edge of the pavement the automobile was about 20 or 25 feet, as near

as I could tell, away from the track. . . . I jerked my body up with the ladder and the grab iron and raised my body and feet above the car as he went by. . . . The automobile knocked two inches of skin off my shin and knee. The automobile crossed the track before the engine crossed the pavement. I did not notice its speed. It was straddle of the black line when he went over the crossing, as though he was running around the tank. The car went toward the north and turned back on the pavement to the east. He went about 50 or 60 feet over the crossing and then he stopped. The automobile struck Mr. McGann. He was standing on the south or east side of the footboard. The engine was traveling about 15 miles an hour as it crossed over the concrete pavement. . . . DuFresne climbed the draw-bar after I climbed the ladder. McGann was crushed about the hips and his limbs and blood was running down his shoe.''

DuFresne testified on behalf of appellee: ''As we approached State route 17 I didn't see any automobile standing, but I saw one coming from the west. We were about 60 feet from the concrete pavement at the time we first saw the car. The automobile was about 100 or 110 feet, something like that, at that time. . . . I should judge this automobile was running 30 or 35 miles per hour. The engine was just a few feet from the crossing. . . . I didn't think the automobile slowed up any, about the same speed, the way it looked. We were almost across as he went around us. He kind of headed northeast, north and then east. . . . After the automobile struck McGann it went on east about 100 to 110 feet and stopped.''

O'Reilly, the engineer on said engine, testified: ''I watched this particular automobile. It slowed down. I saw the automobile coming up and it was getting slower. I just kept on going. Pretty soon the automobile picked up speed and shot around the end of

the tank. At the time I saw the automobile begin to pick up speed the end of the tank was about 10 feet from the concrete pavement and the automobile was about 10 feet from the track on which we were traveling. . . . The automobile swerved to the north, around to the rear end of the tank, and went from the south side of the pavement to the north side of the pavement. It went across the track.'' He further testified that when he first saw said automobile it was going about 25 or 30 miles an hour; ''I noticed that it slowed down some but did not observe to what speed it slowed down, because I was busy at other things.''

All of said witnesses testified in effect that the regular crossing whistles were blown and that an automatic bell on the engine was ringing as said engine approached and crossed said highway.

On the part of appellant, her son testified that he and his mother were driving east on Court Street; that when they approached within a distance of 100 to 150 feet of said crossing they were going about 15 miles an hour, and slowing down all the time. He further testified: ''On my right hand before I got to the railroad tracks there was a garage and filling station in front of the garage, and several cars parked in between, east of the garage, between the garage and the tracks. When I passed the farthest east automobile I looked to the north, because there was nothing there to obstruct my view. I was looking directly south as I passed out from the farthest east automobile. As I proceeded there I saw a railroad locomotive about 30 feet from the crossing. I was about 10 feet from the tracks. I just kept on going. If I had stopped I would have stopped right in the path of the locomotive. There wasn't any use to try to stop. The locomotive hit our right rear fender.''

On cross-examination, this witness further testified: ''I saw that big railroad sign, 'Railroad Crossing' as I

approached. . . . I don't remember seeing the board across it that said 'Danger.' I don't remember seeing a square with a red background in it, with the word 'Stop' on top of it. . . . I had been driving the automobile as I came up Court Street about 15 to 20 miles an hour; no faster than that. . . . My automobile was going about 10 or 12 miles an hour when I went over the tracks. This is my best judgment. As I came up to the tracks I was going 10 or 12 miles an hour. . . . I do not know exactly how many automobiles were standing between the garage and the track of the railroad company along the concrete pavement, but there was, for a space that you could not see down the track. You could not see down the track until you got up to the track, and there were not places where you could see in between the automobiles. . . . The farthest east automobile from the track was about 12 or 15 feet, and these automobiles were about 8 or 10 feet off the pavement on route 17, south of the pavement. I did not come to a dead stop as I came up to the railroad before I crossed, I was going so slow. . . . As a matter of fact, I did not see the engine until I was right on the track. I am positive the bell was not ringing."

R. T. Voorhees testified on behalf of appellant: "I was parked due west of the railroad crossing at the time of that accident. . . . Did not see the crash, but saw everything up to the time of the crash and after the crash. Noticed this Dodge coupe that was being driven by Mr. Humrichouse. . . . When I first noticed the car in front of the garage it was about 100 feet from the track. It was going at the speed of between 12 and 15 miles per hour. The car was gradually slowing up from the time I first noticed it. As it went past where I was parked, approximately 50 feet from the track, I would estimate it at 10 miles per hour, or slowed down to about 10 miles per hour. I am not positive the car stopped, before it got to the crossing. I do know it slowed down."

This witness further testified: "Did not hear any bell or whistle sounded as I was sitting there. Saw the engine coming from the south prior to the accident. It was between 400 and 500 feet down the track, south of the highway, when I noticed it. The engine was headed south, with the tank end to the north. I noticed automobiles parked south of the pavement, between the garage and the railroad crossing. There were two or three, possibly three, I am positive there were two and could have been three. They were parked in a line, with very few inches of space between them. The nearest car was between 20 and 25 feet from the crossing."

Melba Walters testified on behalf of appellant that she was at said crossing just prior to the accident; that she had gone to the car occupied by Mr. Voorhees to deliver a paper and that "just at that time I noticed a car as I went across, and I looked to see whether to go across or not; saw an automobile coming along there, the one that was in the accident later. Didn't pay any attention as to how it was going. It was not going fast, because I had time to get across."

The foregoing is the substance of the testimony with reference to the speed of appellant's car and of the engine in question.

Appellee relies on the speed of appellant's car to support said wilful and wanton counts. It is insisted by counsel for appellee that appellant's car was being driven at from 30 to 35 miles per hour, to and over said crossing, and in view of the fact that there was a crossing signal and a stop signal, at or near said crossing, such speed amounted to wilful and wanton conduct and warranted the jury in finding appellant guilty under said counts.

It has been repeatedly held that a violation of the statute of a State or the ordinance of a city, governing the speed of automobiles or trains, is not of itself

proof of wilfulness in the infliction of an injury, though such violation be an unlawful act. *Illinois Cent. R. Co. v. Hetherington,* 83 Ill. 510–516; *Blanchard v. Lake Shore & M. S. Ry. Co.,* 126 Ill. 416–426; *Illinois Cent. R. Co. v. O'Connor,* 189 Ill. 559–566; *Pittsburgh, C., C. & St. L. Ry. Co. v. Kinnare,* 203 Ill. 388–390; *Henning Brewing Co. v. Atchison, T. & S. F. Ry. Co.,* 150 Ill. App. 514–516; *Enochs v. Trevett,* 229 Ill. App. 235–240.

Nor is an injury regarded as constructively intentional unless it appears that it was the direct, usual, natural and probable result of such unlawful act. *Enochs v. Trevett, supra,* 240. In 5 Corpus Juris 623, it is said:

"If defendant did an illegal or mischievous act which was likely to prove injurious to another, he is answerable for the consequences which directly and naturally resulted from his conduct, even though he did not intend to do the particular injury which followed."

While it is true that actual ill will is not a necessary element of a wanton act, still, to constitute a wanton act "the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness." *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392–397; *Enochs v. Trevett, supra,* 241.

In *Lamarre v. Cleveland, C., C. & St. L. Ry. Co.,* 217 Ill. App. 296, this court, quoting from 29 Cyc. 510, at page 305, said:

" 'In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result. In order to establish wantonness it is not necessary to show an entire want of care. The violation of a statute does not constitute a wilful wrong. A wilful injury will not be inferred when the result may be reasonably attributed to negligence or inattention.' "

The evidence in reference to the speed of appellant's automobile as it approached the crossing in question is conflicting, but, assuming that it was going from 30 to 35 miles per hour, as testified to by two of appellee's witnesses, there is nothing in this evidence tending to show an intentional injury to anyone, nor is that speed on a State highway, where it crosses a railroad crossing, proof of a reckless disregard of the rights of the persons and property of others, such as to evince a willingness to do injury. The danger signals referred to were erected primarily for the protection of the traveling public on the street or highway where it crosses a railroad. The possibility that driving across a railroad track in a light automobile will result in injury to anyone on an engine or in a passenger coach is slight. Taking the evidence in its most favorable light to appellee, it fails to support said wilful and wanton counts.

The next question for our determination is as to whether, the verdict being general, the fact that the evidence fails to support the wilful and wanton counts necessitates the reversal of the judgment. In discussing a question of this character, the Appellate Court in *Grinestaff v. New York Cent. Railroad,* 253 Ill. App. 589, at page 596 says:

"The cause went to the jury on all the counts in the declaration and there was a general verdict. If appellee, therefore, has not established the fifth count and made out a case of wilful or wanton injury, the verdict cannot stand. The injury could not have been caused wilfully or wantonly and negligently at the same time. (*Chicago City Ry. Co. v. Jordan,* 215 Ill. 390; *Walldren Express & Van Co. v. Krug,* 291 Ill. 472; 45 Corpus Juris, 674, 1090 and 1091; *Chicago R. I. & P. Ry. Co. v. Hamler,* 215 Ill. 541; *Kalinski v. Williamson County Coal Co.,* 263 Ill. 265; *Goodman v. Chicago & E. I. Ry. Co.,* 248 Ill. App. 128, 137; *Stoike v. Bonasera,* 243 Ill. App. 281, 286; *Burns v. Chicago & A. R. Co.,* 229 Ill. App. 170, 186.)

"In *Stoike v. Bonasera, supra,* the court say on page 286:

" ' "Negligence and wilfulness are as unmixable as oil and water. 'Wilful negligence' is as self-contradictory as 'guilty innocence.' " Salmond says, "No result which is due to carelessness can have been also intended. Nothing which was intended can have been due to carelessness." Salmond on Jurisprudence, p. 409 (7th Ed.).' "

Under the foregoing authorities, the verdict being general, the judgment must be reversed.

It is next insisted that the court erred in its rulings on the instructions.

As to appellee's first given instruction it is contended that the court erred in stating that appellee's intestate "was crushed between said automobile and the tank of the engine." While the evidence tended to show that to a certain extent the limbs of appellee's intestate were crushed, there was no occasion for the court so stating in the instruction.

Appellee's fourth instruction is erroneous in that it in effect assumes that appellant's son was guilty of wilful and wanton conduct.

Instructions 5, 6 and 11 are argumentative and tend to invade the province of the jury, and should not have been given.

It is contended that appellee's eighth and thirteenth instructions erroneously referred to the maximum amount which can be recovered in an action of this kind. Said instructions in effect state the provisions of the statute, and, under the holding in *Deming v. City of Chicago*, 321 Ill. 341–344, they cannot be held erroneous. However, there was no occasion for the giving of both of these instructions, as they were of the same character, and the repetition was not proper. *Nelson v. Chicago City Ry. Co.*, 163 Ill. App. 98–102; *Wood v. Illinois Cent. R. Co.*, 185 Ill. App. 180–184; *Daubach v. Drake Hotel Co.*, 243 Ill. App. 298–304, 305.

Other errors were assigned on the record, but in view of what we have already said it will not be necessary to discuss the same. For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*