Della Price, Defendant in Error, v. M. J. Bailey, Plaintiff in Error.

Gen. No. 35,608.

Heard in the first division of this court for the first district at the December term, 1931. Opinion filed February 29, 1932. Rehearing denied March 14, 1932.

O'Brien & Hanrahan, for plaintiff in error; Matthew J. O'Brien, of counsel.

Guerine & Brust, for defendant in error; Guy C. Guerine and Sidney R. Tarkoff, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff brought suit to recover damages for injuries she received as the result of a collision between an automobile in which she was riding, driven by her husband, and an autotruck belonging to defendant. Upon trial she had a verdict of $8,000, and from the judgment defendant appeals.

The accident happened about 10:30 p. m., on May 26, 1930, on Roosevelt road, about 150 feet west of the Desplaines river. Plaintiff and her husband were going from Chicago westward to their home in Maywood. They were driving in a Ford automobile, with plaintiff in the front seat on the right-hand side. There were no other passengers. Roosevelt road runs east and west and is about 40 feet wide; the north half of it is divided into two lanes of traffic, each 10 feet wide. As the car in which plaintiff was riding was proceeding westward it ran into the left rear end of defendant's truck which was headed westward, and plaintiff was injured in the collision.

Plaintiff's declaration alleged general negligent operation of defendant's automobile, and in the second count that defendant's driver wilfully and wantonly caused the collision; the third and fourth counts alleged negligence of defendant in failing to maintain lights on his truck, and the fifth predicated negligence on the part of defendant in allowing his truck to stop and obstruct the highway.

Plaintiff's version of the occurrence is that after they had passed over the bridge over Desplaines river

they were met by an eastbound car which blinded both plaintiff and her husband with its glaring headlights; she closed her eyes and heard her husband exclaim about the lights; plaintiff kept her eyes closed for perhaps a minute, and upon opening them found that their car was about two or three feet from a truck which she testified was standing still at the time, at about the center of the north traffic lane; that her husband tried to turn so as to pass the truck to the left, but that the front part of the car struck the left rear end of the truck. The driver of the defendant's truck denied that he was standing still at the time, but says that he was going westward at about 8 to 10 miles an hour, running about a foot and a half from the north edge of the road when he felt the jar of the automobile running into his truck.

In view of plaintiff's admission that just before the collision she was blinded by the headlights of the eastbound car and was "right on the top of the truck" when she saw it, the evidence that the truck was standing still is doubtful.

The controversy seems to be as to whether or not the defendant had a rear light which was lit at the time of the accident. Plaintiff testified that she saw no such light. The driver of defendant's truck, Alex Reusch, testified that he was employed by defendant and had been hauling dirt in his truck, which was a dump-body type with a cab for the driver; that while hauling a load of dirt and returning to Maywood his left rear tire blew out; that he notified Mr. Bailey, his employer, and together they tried to repair the tire but did not succeed, so the dirt was unloaded from Reusch's truck into a truck driven by Bailey, and Reusch started to drive to Maywood with his flat tire, going ahead of the truck driven by Bailey. He testified that both the head and rear lights were regulated by a switch from the inside of the cab, and that before he headed for May-

wood he observed that both these lights were burning; that Bailey and his wife followed for a time in the other truck and when they came to 31st street Bailey turned off and Reusch continued towards Maywood; he testified that the tail light had been fixed about a week and a half before the accident and that it worked all right continuously thereafter; that after the collision the tail light was not burning although he had not turned it off; that the tail gate of the truck was knocked off and the frame bent a little; that after the accident police officers who arrived at the place turned on the switch of the truck and the headlights burned but the tail light would not burn; that when he, Reusch, started the motor the tail light flickered. Bailey, the defendant, corroborated Reusch, saying that when he followed him, up to the time he left him at 31st street, Reusch's lights were burning, including the tail light; that after the accident he examined the truck and turned the light on at the switch but it did not burn; that he then worked the socket of the light and then the light worked.

We are of the opinion the evidence did not sufficiently prove that the rear light was not burning at the time of the accident. We have only the testimony of the plaintiff that it was not burning, and this is weakened by her admission that for a minute or so before the accident her eyes were closed, or, as she said, "blinded." On the other hand, the light was working properly a very short time before the collision, although after the collision it was not burning; but when Bailey screwed the bulb tightly the light worked properly. It is reasonable to infer that the jar of the collision loosened the bulb so as to put out the light.

But even if, at and just before the collision, the light on the rear of the truck was not burning, this would not of itself impose liability. In *McDermott v. McKeown Transp. Co.*, 263 Ill. App. 325, we have recently

held, under somewhat similar circumstances, that the defendant would not be liable even if the rear light was not lit at the time of the accident if the jury believed from the evidence that the failure of the light was occasioned without negligence on the defendant's part.

We hold that plaintiff failed sufficiently to prove the charges of negligence in respect to the light, and we also hold that there was no evidence tending to show that the accident was caused by the wanton and wilful operation of defendant's truck.

The evidence rather leads to the conclusion that the real cause of the accident was the blinding lights of the eastbound car which passed plaintiff and her husband just before the collision, which prevented them from seeing ahead. Plaintiff admits that her eyes were closed, that she could not see. It is a well known fact that when one is blinded by dazzling light in the eyes one is unable to see for some little time, even after the eyes are opened.

We cannot hold that plaintiff was guilty of contributory negligence as a matter of law. Although plaintiff says that she felt perfectly safe when riding with her husband and that she was sitting somewhat in the corner facing to the southwest, yet these facts alone would not prove contributory negligence. The jury could properly conclude that no matter how watchful she may have been, the blinding lights made possible her failure to see defendant's truck in time.

A special interrogatory was submitted to the jury as to whether the defendant was guilty of wanton and wilful operation of the truck, which was answered in the affirmative. This was subsequently set aside by the court. It was error to submit such an interrogatory and at the same time give instructions which which might entirely disregard the theory contained in the interrogatory. There was no instruction which explained the difference between a case based upon a charge of general negligence and a charge of wilful

and wanton negligence. *Nosko v. O'Donnell,* 260 Ill. App. 544.

The defendant argues that as the evidence failed to establish that defendant was guilty of wilful and wanton conduct in operating the truck, as charged in the second count of the declaration, the trial court should have set aside the general verdict, citing *Grinestaff v. New York Cent. R.,* 253 Ill. App. 589; *O'Neall v. Blair,* 261 Ill. App. 470; *Streeter v. Humrichouse,* 261 Ill. App. 556. These cases support this point, although they seem to be in conflict with *Jernberg v. Mix,* 199 Ill. 254; *Guianios v. DeCamp Coal Min. Co.,* 242 Ill. 278, and contrary to the usual practice. *Scott v. Parlin & Orendorff Co.,* 245 Ill. 460.

Where a count of wilful negligence is not established by the evidence it would seem desirable, as a practical proposition, that the record should so indicate, so that this question would be *res adjudicata.* This would avoid a possible second adjudication of this question in the event that the judgment debtor were imprisoned.

It is said by defendant that the court erroneously submitted the special interrogatory to the jury without its having been first submitted to counsel for defendant, citing chapter 110, paragraph 79, Illinois Statutes (Cahill), relating to special interrogatories, reading "which questions of fact shall be submitted by the party requesting the same to the adverse party, before the commencement of the argument to the jury." It was held that this statute is mandatory and failure to observe it requires a reversal. *Pittsburg, C., C. & St. L. R. Co. v. Smith,* 207 Ill. 486; *Chicago City Ry. Co. v. Jordan,* 215 Ill. 390.

We notice that the bill of exceptions does not indicate which of the instructions, given or refused, were requested by plaintiff or defendant, but reads that the instructions were given "at the request of the

plaintiff and defendant.'' Upon such a record we do not consider errors relating to the instructions.

For the reasons above stated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

O'CONNOR, P. J., and MATCHETT, J., specially concur.

MR. PRESIDING JUSTICE O'CONNOR specially concurring: I agree that the judgment should be reversed and the cause remanded for the reasons stated in the opinion. I do not agree with the cases of *Grinestaff v. New York Cent. R.,* 253 Ill. App. 589; *O'Neall v. Blair,* 261 Ill. App. 470, and *Streeter v. Humrichouse,* 261 Ill. App. 556, which hold that a general verdict in a personal injury case should be set aside where some counts of the declaration charge the defendant with negligence and other counts charge him with wilful and wanton conduct, there being no evidence to sustain the wilful and wanton counts.

In the *Grinestaff* case, the court said, p. 596: ''The cause went to the jury on all the counts in the declaration and there was a general verdict. If appellee, therefore, has not established the fifth count and made out a case of wilful or wanton injury, the verdict cannot stand. The injury could not have been caused wilfully or wantonly and negligently at the same time.'' The court there cites a number of cases in support of its position as stated in the quotation just made, but I think none of the cases cited goes so far. The *O'Neall* and the *Streeter* cases, *supra,* announce the same rule, referring to the *Grinestaff* case.

In the case of *Guianios v. DeCamp Coal Min. Co.,* 242 Ill. 278, it was held that in an action for damages for negligently causing the death of a person, if the evidence shows that the defendant was guilty of negligence, recovery might be had under a count charging wilfulness. In that case the court said (p. 281): ''The

declaration charged that the appellant 'negligently, carelessly and wilfully' did the things complained of, causing the death of Antonopoulos. The proof does not tend to show that the act was wilfully done, and counsel for appellant argues that there was a variance between the proof and the declaration, and that therefore the motion made at the close of plaintiff's evidence for an instruction to find appellant not guilty should have been granted. In tort the plaintiff may prove a part of his charge if the averment is divisible, and proof of a part of the allegations, if sufficient to sustain a case, will sustain a judgment." (Citing authorities.) "In this case, if the proof showed that the act was caused by the negligence of appellant, recovery could be had even though the negligence was not wanton or wilful."

In *Levy v. Schikowski*, 239 Ill. App. 447, which was a proceeding under the Insolvent Debtors' Act, Cahill's St. ch. 72, ¶ 4 *et seq.*, it appeared that the judgment under which the defendant was arrested on a *capias,* was rendered in a suit for damages for personal injuries. In that case the declaration was in two counts, in each of which it was held that they charged "the defendant with wilfully and negligently driving the automobile." We there said (p. 451): "The declaration, verdict and judgment do not necessarily show that the defendant in the tort case was guilty of wilful negligence, as they, in fact, may have involved only the finding that the defendant was guilty of ordinary negligence. (*Guianios v. DeCamp Coal Min. Co.*, 242 Ill. 279.)"

In *Van Meter v. Gurney*, 240 Ill. App. 165, it was said (p. 186): "The rule is that where the declaration charges both wilful and ordinary negligence, even though the proof shows ordinary negligence and not wilful negligence, a recovery may be had on ordinary negligence. *Guianios v. DeCamp Coal Min. Co.*, 242

Ill. 278, 281.'' In *Abbrassart v. Bouchard,* 241 Ill. App. 484, the court quoted with approval from the *Levy* case, *supra* (239 Ill. App. 447.) In the *Grinestaff* case the basis of the decision seems to be that there is a radical distinction between a count charging one with negligence and another count charging wilful and wanton conduct. But in *Walldren Express & Van Co. v. Krug,* 291 Ill. 472, it is held that there is not such a marked distinction between the two. In that case there were counts charging the defendant with negligence and a count charging that the defendant recklessly and wantonly operated a certain truck. The court said (p. 476): ''One count of the declaration charged that the defendant failed to stop its automobile when danger was imminent and carelessly, recklessly and wantonly ran it upon and against the plaintiff. If the facts shown by the evidence established the truth of this averment, the contributory negligence of the plaintiff would not relieve the defendant from liability for its wanton negligence.'' (Citing authorities.) ''Whether the negligent conduct of a defendant which has resulted in injury to another amounted to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a wilful disregard of consequences or a willingness to inflict injury.'' And continuing, the court discussed the meaning of the words ''wantonness,'' ''wilfully'' and ''wilfulness,'' and held that they have been used to express the same thing, and continuing said (p. 478): ''Thus, in *Lake Shore and Michigan Southern Ry. Co. v. Bodemer, supra* (139 Ill. 596), 'What is meant by ''such gross negligence as evidences wilfulness?'' It is ''such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness.''—2 Thompson on Negligence, 1264, sec. 52.' Again, in the same case: 'What degree

of negligence the law considers equivalent to a wilful or wanton act is as hard to define as negligence itself.' In *Chicago City Ry. Co. v. Jordan*, 215 Ill. 390, we said: 'Where there is . . . a degree of wilful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes wilful or wanton. In such a case there may be an actual intent to injure or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended.' . . . There was no error, therefore, in the refusal to instruct the jury that there could be no recovery on the ground of wilful or wanton negligence.'' In that case it will be noted that there may be such a degree of negligence which the law would consider equivalent to a wilful and wanton act. So that the evidence may show in a given case that the defendant was guilty of negligence while the evidence might again show if the conduct of the defendant was more reckless that the degree of negligence would be equivalent to a wilful or wanton act.

In my opinion, the judgment rendered in a personal injury case, where there are counts charging the defendant with what might be termed ordinary negligence, and a count or counts charging the defendant with such negligence as the law would hold to be equivalent to wilful and wanton conduct, a general verdict and judgment on the verdict in favor of plaintiff, might be sustained although the evidence was insufficient to sustain the wanton charge. One good count with supporting evidence is sufficient. *Scott v. Parlin & Orendorff Co.*, 245 Ill. 460.

MR. JUSTICE MATCHETT: I agree with the opinion of Mr. Presiding Justice O'Connor.