Irvin Guy Goodman, Appellee, v. Keeshin Motor Express Company, Appellant.

Gen. No. 37,824.

228

Opinion filed December 24, 1934.

SHANNER & SHANNER, of Chicago, for appellant.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

In the early morning of January 25, 1933, plaintiff while driving an automobile on State highway No. 6 about five miles east of Geneva, Illinois, collided with a truck owned and operated by the defendant; plaintiff was injured and brought suit for damages and upon trial had a verdict for $4,000; defendant appeals from the judgment on the verdict.

The highway at the scene of the accident is of concrete 18 feet wide; the road passes underneath a railroad viaduct which is about 600 feet east of the scene of the accident; going westward from the viaduct there is a hill or upward grade for 800 or 900 feet; the brow of the hill is about 20 feet higher than the grade of the highway beneath the viaduct. Both vehicles were headed west. The collision occurred just as plaintiff passed the brow of the hill, going westward; there had been considerable fog during the night but toward 6:30 a. m., the time of the collision, it was still dark but not so foggy.

The truck of the defendant had left Chicago at about 11:30 p. m.; it was a five-ton truck, eight feet wide and 20 feet long; it was equipped with a red tail light located on the left side about 22 inches from the ground, and with three other lights in the center of the truck about 20 inches below the body; when the truck left Chicago the lights were inspected and found to be burning.

The truck was driven by Herbert Peterson, accompanied by Tony Sinkevis as a helper; shortly before the accident Peterson, confused by the fog, drove the truck partially off the highway so that the wheels on the right-hand side were in the mud, about two or three feet from the right edge of the concrete pavement; Peterson made various attempts to get the truck back on the roadway by driving forward and backward but the only result was to mire the truck more deeply; after these efforts had continued for some time a cattle truck came along, headed east, and its driver undertook to assist defendant's truck to get back upon the concrete road; the cattle truck backed up behind the defendant's truck and a chain was attached from the rear end of one truck to the rear end of the other; the left side of the cattle or eastbound truck was about two feet to the north of the left side of defendant's truck, so that the cattle truck was largely in the westbound traffic lane; the headlights of the eastbound truck were burning.

Plaintiff with his father-in-law left Oak Park, Illinois, during the early morning and proceeded westward on route No. 6 for Sterling, Illinois; the roadway was wet. Plaintiff testified that he was generally driving about 40 miles an hour but slackened his speed to 25 miles an hour upon approaching and passing under the railroad viaduct; he proceeded up the hill, with his headlights burning, at the rate of about 25 miles an hour; as he approached the cattle truck he saw its

headlights burning and thought it was coming toward him; he testified that it was "hugging the center of the road"; he saw no lights ahead except the headlights on the cattle truck; plaintiff turned to the right, expecting to pass this truck on the right, and testified that he did not see the defendant's truck, headed westward, until he was about opposite the headlights of the cattle truck; that as he turned to the right his car went off the concrete pavement and he ran into the right rear corner of the defendant's truck.

There were no rear lights burning on defendant's truck after the accident, and there is considerable argument as to whether the lights were extinguished by plaintiff's automobile when it collided with the truck, or whether, as plaintiff argues, the chain attached to the cattle truck broke the connecting electrical wire which supplied the lights. In our view of the case it is not necessary to determine what extinguished the lights.

The first count of plaintiff's declaration alleged that defendant was negligent in allowing its truck to stand on a State highway while it was dark, and the third count alleged that defendant was guilty of negligence in failing to give notice to the plaintiff of the presence of its truck on the highway after it had become mired. Defendant cites a large number of cases involving the ordinary situation where one car is following another going in the same direction, but these cases are not applicable to the instant situation. The accident happened just over the brow of a hill; it was still dark; plaintiff was confronted with the bright lights of the cattle truck which was headed eastward; these lights naturally prevented him from seeing defendant's truck to the rear. It is well known that one facing the glare of a headlight in the darkness cannot see objects behind the light. Seeing the cattle truck in the center of the road, plaintiff turned well toward the right in

an attempt to pass it, and it was not until he was out of the glare of these lights that he for the first time saw defendant's truck. The situation presented a kind of trap for any vehicle approaching from the east. The jury was justified in finding that plaintiff was free from contributory negligence. In *Price v. Bailey,* 265 Ill. App. 358, we held that the accident was caused by the blinding lights of a car approaching from the direction opposite to that in which plaintiff was driving.

The jury could properly conclude that the defendant's driver was negligent in permitting the trucks to stand as they did without any warning to an automobile coming westward. As we have said, the situation was one well calculated to mislead the driver of a westbound automobile into believing that he could pass the cattle truck to the right with safety. He would not know of the presence of the defendant's truck until too late to avoid a collision. Defendant's driver should at least have sent his helper eastward to warn any automobiles coming from the east of the conditions, and the jury could properly consider his failure to do this as negligence.

Respective counsel have devoted considerable argument to the question of how far rear lights on automobiles must be discernible and how far the headlights must illuminate with reference to control of driving. As we have said, we do not consider these points as decisive of the present case. The decision in each case depends upon the peculiar facts and circumstances presented. We do not find in any reported case facts exactly like those involved here.

The judgment is affirmed.

*Affirmed.*

O'Connor, P. J., and Matchett, J., concur.