Alice H. Greene, Individually and as Administratrix of Estate of Earle D. Greene, Deceased, Appellees, v. John Citro et al., Defendants. Paul C. Noonan and Joseph Duffy, Appellants.

Gen. No. 40,178.

Opinion filed December 21, 1938.   Rehearing denied January 5, 1939.

JOHN A. BLOOMINGSTON, of Chicago, for appellants.

LEDERER, LIVINGSTON, KAHN, ADLER & ADSIT, of Chicago, for appellees.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

On the evening of March 5, 1935, a Chrysler automobile driven by defendant Paul Noonan collided with a Nash automobile, injuring some of those riding in the Nash car; Alice H. Greene brought suit and had a verdict and judgment against Paul C. Noonan and Joseph Duffy for $1,000; her husband, Earle D. Greene, died from injuries received in the accident, and his administratrix, also suing, had a verdict and judgment against the same defendants for $10,000. Both these defendants appeal.

The Chrysler car belonged to John Citro, originally made one of the defendants, but under instructions

from the trial judge was dismissed from the cause, as was also defendant John Noonan.

Joseph Duffy operated a garage; Paul Noonan was an employee and was driving the Chrysler from Citro's residence back to the garage, going south on Springfield avenue when his car collided with the Nash, going west at the intersection of Gladys avenue. Plaintiffs' complaint alleged general negligence on the part of Noonan in driving the Chrysler car, and also that he wantonly and maliciously drove it at a high and dangerous rate of speed. Defendant Noonan says he was driving his car carefully; that he was approaching from the right of the Nash car and entitled to the right of way at the street intersection; that the Nash was not lighted at the time and the Chrysler was lighted; that the driver of the Nash and its occupants were negligent in failing to see the Chrysler car.

The accident happened about 10 o'clock in the evening; the Nash car was driven by Frank Peterson, although it was owned by a Mr. Wand, who was not in the car at the time; Grace Peterson was sitting on the front seat beside her husband; Mr. and Mrs. Greene, Mary J. Farley and a small boy were in the rear seat; they had been to a church meeting and were returning home, going west on Gladys avenue, when their car collided at the street intersection with the Chrysler car going south on Springfield avenue. At the time of the collision the street lights at the intersection were not lit and it was very dark at that point. The Chrysler headlights were lighted but no one of the five persons in the Nash saw the Chrysler at any time before the collision; Paul Noonan did not see the Nash until just before the collision. The Chrysler struck the right side of the Nash towards the rear when the cars were on the north side of Gladys avenue and the west side of Springfield; the Nash was pushed sideways across Gladys avenue, against the curb on the southwest

corner; its axle was broken and the right rear side was very badly damaged.

Noonan says he could see 50 or 60 feet ahead of him with his headlights; that as he approached Gladys he slowed down to about 12 miles an hour and blew his horn, when the Nash suddenly appeared in front of him. It is argued that the lights on the Nash were not burning as the car approached Springfield avenue, but there was testimony to the contrary. Peterson stated to the police and at the inquest that the Nash was going 20 to 25 miles an hour across Springfield. At the trial he testified to 12 miles an hour.

No one in the Nash car saw the Chrysler before the collision, although it is not disputed that its headlights were burning. Noonan's testimony that he was going 12 miles an hour as he approached the intersection is not denied by any witness.

A controverted point is whether the headlights on the Nash car were on before the collision. It was conceded that they were off after the collision, and defendant Noonan accused Peterson of driving without lights. The owner of the car, Mr. Wand, testified that the lights were in good condition, that they had been checked two weeks before the accident and that he saw them burning properly when Peterson left the church with the car. Peterson and Grace Peterson, his wife, testified that the headlights were on as they approached Springfield, as did Mary Farley, who was riding in the back seat. No one who saw the Nash car prior to the accident contradicted this testimony. A bystander, Sortino, testified that immediately after the accident he felt the reflectors of the Nash headlights and they were warm. Under the circumstances it cannot be said that the jury could not properly reach the conclusion that the lights on the Nash were burning as it approached Springfield avenue, and that they were put out by the force of the collision. Plaintiffs'

counsel seem to question whether the headlights on the Chrysler car were burning, but there is no dispute of Noonan's testimony that what he called "regular driving lights" were on at the time.

Photographs of the intersection of the streets are in the record which show that all four corners contain buildings built up to the inner edge of the sidewalk, so that it would be impossible for anyone approaching the intersection to see another approaching on an intersecting street until both cars were fairly close to the respective crosswalks.

While Peterson, the driver of the Nash, may have been negligent in driving into the intersection without seeing the Chrysler, yet, as the court properly instructed the jury, his negligence cannot be imputed to plaintiff Alice H. Greene or her deceased husband, Earle D. Greene.

At the conclusion of the evidence defendants Paul Noonan and Joseph Duffy requested the court to instruct the jury to find them not guilty under the wilful and wanton count, which request was refused. On the motion for a new trial the court gave as his reason for denying this motion that no special interrogatory had been presented for the jury to pass upon the question of wilful and wanton conduct. The court further said: "I therefore hold that the verdict as rendered by the jury in this case is a general verdict, and is not a verdict based upon wilful and wanton conduct." Defendants argue that by the refusal to instruct the jury as to the wilful and wanton count they were deprived of the defense of contributory negligence. One of plaintiffs' requested instructions was predicated upon the necessity of Earle D. Greene being at all times in the exercise of ordinary care for his own safety.

There was no evidence from which the jury could properly conclude that either Earle Greene or Alice Greene was not in the exercise of ordinary care for his

or her own safety. There is no evidence whatever as to what Earle Greene did, and plaintiff Alice Greene, who was sitting in the back seat to the left, was in no position to do anything which might have avoided the collision. As we said in *Schultz v. Live Stock Nat. Bank,* 278 Ill. App. 623 (Abst.), quoting in part from *St. Clair Nat. Bank v. Monaghan,* 256 Ill. App. 471, "if a guest were required at street intersections to look out and warn the driver of approaching cars, 'a most uncomfortable and hazardous position might be created for the driver of a car who happened to have several passengers as guests.' If all the passenger-guests should constantly be warning and directing the driver how to proceed he would be so distracted as to be unable to drive the car carefully. Back seat driving should not be encouraged."

The witness Jaffe testified that the Chrysler, going south, stopped at Jackson, which is a short (half) block north of Gladys avenue; that after it had continued south on Springfield and he had walked a distance estimated at about 70 feet he heard the crash of the collision at Gladys and Springfield. Gladys is approximately 400 or 450 feet south of Jackson, and defendants' counsel submitted figures, which do not seem to be disputed, that Jaffe's testimony indicates the Chrysler moved from Jackson to Gladys at the rate of approximately 15 miles an hour. At least, the evidence of this witness is not sufficiently definite as to the speed of the Chrysler as to justify any conclusion that it was going at "terrific speed." It is also sought to support the wilful and wanton count alleging excessive speed by the damaged condition of the Nash car. As was said in *Glover v. Southern Transp. Co.,* 16 La. App. 63, 133 So. 474, ". . . it is difficult to account for the antics of a car after a collision. . . ." Under somewhat similar circumstances in the case of *Larsh v. Strasser,* 183 Iowa 1360, where it was argued that an excessive rate of speed could be inferred from the circumstances,

it was held that there was no basis on which to found deductions as to the rate of speed of either vehicle. Peterson was the only witness testifying to the exact damage to the Nash, although there were general statements by other witnesses. Peterson says there was a dent in the side and the chassis bent and a wheel broken and axle damaged. There is no evidence as to how much of this was caused by the respective speeds of the cars. At least, there was no sufficient basis for the jury to conclude that the Chrysler was being driven with wilful and wanton negligence.

Defendants criticise the instruction given at plaintiffs' request touching the right of way. The criticism is technical and the instruction on this subject, given at the request of the defendants, properly covered the question. Moreover, even if Peterson was in the wrong in this respect, which is not conceded, his conduct could not be imputed to Earle or Alice Greene, and while there is no direct evidence as to the position of either car as it entered the intersection, it is apparent that the Nash was well across the intersection before the Chrysler entered the intersection. The statute does not give to one entitled to the right of way license to run into the other car regardless of its position. The fact that the drivers of both cars testified that they were ignorant of the position of the other car removes to some extent the applicability of the statute.

We cannot say that the verdicts are sufficiently large to indicate passion and prejudice on the part of the jury. Mr. Greene at the time of his death was 46 years of age, had a responsible position with Sears, Roebuck & Company, was the father of three children, and at the time of his death was earning more than $3,000 a year and also participated in the profit sharing plan of his employer. The amount of the verdict is not excessive. Neither is the verdict of $1,000 for Alice Greene.

Defendants' counsel makes some criticism of the conduct upon the trial of counsel for plaintiffs, and there is some justification for this, but we do not think there is anything of sufficient importance to require a reversal.

We are in accord with the statement of the trial court that the verdict rendered is a general verdict and is not a verdict based upon the wilful and wanton count. (See special concurring opinion of Mr. Presiding Justice O'Connor in *Price v. Bailey,* 265 Ill. App. 358.)

The judgments, based upon the verdict of general negligence, are affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.